DEMPSEY *v.* STATE.

Opinion delivered May 20, 1907.

1.  HOMICIDE—DEFENSE OF FATHER.—A son has no right to strike one who has stabbed his father after he had ceased his assault upon the father, and when there was no reasonable apprehension of immediate and impending injury to the father.   (Page 84.)

2.  CRIMINAL LAW—REASONABLE DOUBT.—A reasonable doubt is not a mere  possible or imaginary doubt, but such a doubt as would cause a prudent man to hesitate in the graver transactions of life; and a juror is satisfied beyond a reasonable doubt if from consideration of all the evidence he has an abiding conviction of the truth of the charge.   (Page 84.)

3.  INSTRUCTIONS—CONSTRUCTION AS A WHOLE.—It was proper for the court to tell the jury to consider all the instructions together, and that it was a question of fact for the jury to determine whether the theory of the State or of the defense was true.   (Page 85.)

4.  SAME—REPETITION.—It was not error to refuse prayers for instructions which were fully covered by instruction given.   (Page 86.)

5. ' HOMICIDE—SUFFICIENCY OF EVIDENCE.—Evidence, on a trial for homi-
    cide, that defendant struck a blow which contributed to decedent's
    death was sufficient to support a conviction of murder, though another
    is shown to have given decedent a fatal blow. (Page 86.)

Appeal from Faulkner Circuit Court; *Eugene Lankford,*
Judge; affirmed.

*Sam Frauenthal,* for appellants.

1. The sixteenth instruction is erroneous in that it leaves
out of consideration the question whether or not the defendants
honestly believed at the time they struck that their father was
in great danger, and it was not proper to tell the jury that de-
fendants had no right to strike if at the time deceased had
ceased the assault. 59 Ark. 132.

2. It was error in the court to refuse an instruction to
the effect that, although they might take into consideration the
interest of the defendants in the result of the trial, yet they should
give their testimony impartial consideration, and not arbitrarily
disregard it. 77 Ark. 334.

3. Under the evidence the blow struck by John Dempsey
did not kill, nor contribute to the death of, deceased. Hence
the court erred in refusing the twenty-eighth instruction.

*Wm. F. Kirby,* Attorney General, and *Daniel Taylor,* Assist-
ant, for appellee.

1. The evidence is positive that, at the time deceased was
struck by the defendants, he had abandoned the assault upon
their father and was retiring from the fray. Defendants saw
and knew this, and they were properly convicted of voluntary
manslaughter.

2. When the instructions are considered as a whole, as
they should be, they fully and fairly present the law of the case.

3. The blow struck by John Dempsey materially contrib-
uted to the death of deceased, and the question of the guilt or
innocence of either of the defendants was properly submitted
under a correct instruction to the jury. 2 Bishop, New Crim.
Law, 637; 28 Ark. 155; 60 Ark. 76; 67 L. R. A. 426; 45 *id.*
783; 28 S. W. 409.

WOOD, J. On the 24th day of March, 1906, at the town
of Greenbrier, in Faulkner County, Arkansas, Smith Dempsey

and John Earnhart became involved in a quarrel about some money which Earnhart desired to borrow from Dempsey. After words had passed, Smith Dempsey struck Earnhart and knocked or pushed him to his knees. As Earnhart rose, he drew his knife; Dempsey retreated several steps; Earnhart pursued him, and struck him one lick with the knife in the back; then, according to the witnesses on behalf of the State, Earnhart turned and retraced his steps a few paces when he was met by the appellants, John and Tillman Dempsey, sons of Smith Dempsey. John had a "paling bolt" about five feet long and squared about four inches. Tillman Dempsey had a knife. Both struck Earnhart almost simultaneously. John struck with the bolt which he had in both hands. He struck Earnhart on the head, and witnesses for the State say the blow could have been heard several yards away. One witness said, when he was struck over the head with the bolt, he "dropped like a beef."

Earnhart was also cut with a knife by Tillman Dempsey just above the left nipple. The wound was three inches long and penetrated the heart. A physician who was present and witnessed the difficulty says the blow over the head "was calculated to produce death," and that the knife wound was fatal. Earnhart, according to the witnesses for the State, after he had cut Smith Dempsey in the back, turned and was going back in the direction where the quarrel and fight between him and Smith Dempsey began, where Earnhart's hat was. He had proceeded but a few steps, had his hands hanging by his sides, and his knife open in his hand, when he was met and attacked, in the manner mentioned, by appellants. This, in brief, was the evidence on behalf of the State. The appellants, on the other hand, show that they ran to assist and protect their father from what they thought to be a deadly assault upon him by Earnhart, and that they struck Earnhart about the time he cut their father in the back. The appellants show that there was no concert of action on their part; and that there was no ill-will on their part toward Earnhart prior to the fight with their father; that they killed suddenly, and under the circumstances indicated.

The above presents the theories of the prosecution and the defense. Appellants were indicted for murder in second degree,

were convicted of voluntary manslaughter, and sentenced to two years in the penitentiary. The court, in the instructions numbered from one to thirty-five inclusive, covered every phase of the testimony in the cause, and declared the law applicable to such cases fully and accurately. Among the instructions to which appellant objected was the following:

"16. The defendants had no right to strike or stab deceased because deceased had assaulted and stabbed their father after deceased had ceased his assault upon their father; and, if you find from the evidence that defendants slew deceased after deceased had ceased to assault their father, and had turned back from pursuing him, you will convict them of whatever degree of homicide the evidence may show they are guilty of."

The instruction, in view of the evidence adduced on behalf of the State tending to show that the appellants assaulted Earnhart after he had ceased to attack their father, and when the latter was no longer in danger of further assault from Earnhart, was correct.

Appellants also objected to the following:

"18. The right of self-defense is allowed to the citizen as a shield and not as a sword, and in the exercise of this right a person must act honestly and in good faith; and if you believe and find from the evidence that defendant sought or voluntarily entered into difficulty with deceased for the purpose of wreaking vengeance upon him, or if you should find and believe that they killed the deceased at the time when they had, because of acts of the deceased, no reasonable apprehension of immediate and impending injury to their father, and did so from the spirit of retaliation and revenge, for the purpose of punishing deceased for past injuries done their father, then the defendants can not justify their acts under the law permitting themselves to defend their father."

The instruction was applicable to the evidence and a correct declaration of the law. Objection was likewise made to the instruction on reasonable doubt, which is as follows:

"30. But reasonable doubt, gentlemen, is not a mere possible doubt, or imaginary doubt, because everything relating to human affairs and depending upon moral evidence is open to some possible or imaginary doubt; but it is such a doubt as

arises from such a candid and impartial consideration of all the evidence in the case as would cause a reasonable and prudent man to pause and hesitate in the graver transactions of life; and a juror is satisfied beyond doubt if from a candid consideration of all the evidence he has an abiding conviction of the truth of the charge."

But the instruction was not erroneous under many decisions of this court. *Palmore* v. *State,* 29 Ark. 248.

It is urged that the court should not have given the following:

"35. I intended to add, gentlemen, that no one instruction should be considered by you alone; but all the law or instructions given you by the court are to be considered together as the law governing the case. I instructed you on the law provided the evidence and the theory of the State be true. I have also instructed you upon the law provided the evidence and theory of the defendants be true. It is a question of fact for you to decide which to be true."

The instruction was unobjectionable. It was proper for the court to tell the jury to consider all the instructions together as the law of the case, and that it was a question of fact for the jury to determine from the evidence as to whether the theory of the State based on the evidence in her behalf, or the theory of the defense based on the evidence in behalf of appellants, were true.

Appellants contend that the court erred in refusing the following requests for instructions:

"18. The court instructs the jury that if you believe from the evidence that the defendant honestly believed, without fault or carelessness on his part, that his father was in danger of losing his life, or of receiving great bodily injury at the hands of Earnhart, and that the danger was urgent and pressing, then the defendant had the right to act in defense of his father, even to the taking of the life of Earnhart; and, in determining whether the defendant so believed, it is your duty to consider the situation at the time as it appeared to the defendant, together with all the facts and circumstances that have been shown in the testimony which may have influenced his belief at the time.

"21. The defendant has the right to testify, and the jury

should give his testimony the same impartial consideration that you accord to the testimony of other witnesses. You should not arbitrarily disregard what he testifies simply because he is the defendant, nor are you required blindly to receive a fact as true before he says it is true, but you are to consider his testimony in connection with the other facts in proof, in order to determine whether his statements are true and made in good faith. In considering the degree of credit to be given it, you may take into consideration his appearance and manner while testifying, the reasonableness or unreasonableness of his statements, and his interest in the result of your verdict.

"28. Before you can find the defendant John Dempsey guilty of murder in the second degree, or of manslaughter, you must find from the evidence beyond a reasonable doubt that the blow that John Dempsey struck Earnhart actually killed him; and if you find from the evidence that Earnhart was stabbed by Tillman Dempsey, and that said stabbing was the cause of his death, and that defendant did not aid or abet Tillman Dempsey in such stabbing, then you will acquit defendant John Dempsey of the charge of murder in the second degree and manslaughter."

The court in instructions already given fully and correctly declared the law, and in better form than was presented by the refused requests. It was not necessary to give these after the charge which the court had already given, and it was not error to refuse them. So far as John Dempsey was concerned, there was evidence from which the jury might have found that the blow which he struck contributed to the death of Earnhart. That was sufficient. Upon the whole, we have rarely seen a case of such magnitude more correctly tried. The charge to the jury was more voluminous than was necessary, but it was not erroneous. On the contrary, it was an accurate statement of the law as it has been often announced by this court. The verdict of the jury was responsive to the evidence adduced on behalf of the State. The judgment is therefore affirmed.