ANDERSON GENE DuBOIS *v.* STATE OF ARKANSAS

5734                                    494 S.W. 2d 700

Opinion delivered May 21, 1973

*Donald A. Forrest,* for appellant.

*Ray Thornton,* Atty. Gen., by: *Milton Lueken,* Asst. Atty. Gen., for appellee.

JOE C. BARRETT, Special Justice. Anderson Gene Du-Bois was convicted of murder in the first degree in the Crittenden County Circuit Court and sentenced to death. While imposition of the death penalty was not constitutionally permissible, we would not reverse this case solely on that ground, but would remand it for resentencing in line with the procedure approved by this court in *O'Neal v. State*, 253 Ark. 574, decided December 11, 1972.

The controlling principle involved in this appeal is the application of Section 43-2116, Arkansas Statutes Annotated to the record made in the trial court. That Section reads as follows:

"A conviction cannot be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows that the offense was committed, and the circumstances thereof. Provided, That in misdemeanor cases a conviction may be had upon the testimony of an accomplice."

Obviously the charge upon which DuBois was tried is a felony.

## ACCOMPLICES

Counsel for DuBois forcefully argue that witnesses, Linda Austin and G. W. Stewart, were accomplices to the crime for which DuBois is charged.

In *Froman and Sanders* v. *State*, 232 Ark. 697, 339 S.W. 2d 601, this Court said:

"There is a conflict of authorities as to whether an accessory after the fact is an accomplice, but the decisions of this Court are to the effect that he is."

Applying this rule, whether Mrs. Austin, Mr. Stewart or either of them were accessories before or after the fact or actively participated in the commission of the crime becomes immaterial if, in fact, they were either.

In *Havens* v. *State,* 217 Ark. 153, 228 S.W. 2d 1003, this Court said:

"We have approved the following test applied to determine whether one is an accomplice: 'Could the person charged be convicted as principal or an accessory before the fact or an aider and abetter upon the evidence? If a judgment of conviction could be sustained then the person may be said to be an accomplice. . .' "

In *Froman and Sanders* v. *State, supra,* this Court quoted with approval the following statement from Underhill's Criminal Evidence, 5th Edition, Volume I, Page 335, as follows:

"The burden is on the defendant to show that the witness for the state is an accomplice. This is usually determined by the Court as a question of law, but if the evidence is conflicting as to the participation of the witness in the commission of the crime the matter should be left to the jury under proper instruction as to intent and participation."

Applying these tests to the record in this case, this Court is of the opinion that Linda Austin, at least, was an accessory within the meaning of Section 43-2116.

The record reflects that at the time of the trial of DuBois, G. W. Stewart was charged along with appellant and Jerry Austin with the murder of Mack Howell. He had been held in the West Memphis City Jail from the time of his arrest until the time of the trial. During the trial counsel for the State conceded that Stewart was an accomplice. In view of this concession by the State, for the purpose of review (as distinguished from what may occur on a re-trial), we must accept Stewart's status as an accomplice. Such concession having been made in the trial of this case, it relieved the defense counsel from the burden of proof on the subject and may well have affected the trial strategy or the method of going forward with proof and in the nature of the argument.

## CORROBORATIVE EVIDENCE

In *Pitts* v. *State*, 247 Ark. 434, 446 S.W. 2d 222, this Court said:

"... Under the statute a conviction for a felony cannot be had upon the testimony of an accomplice 'unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof.' Ark. Stat. Ann. Section 43-2116 (Replacement 1964). In construing the statute we have held that the test of the sufficiency of the corroboration is whether, 'if the testimony of the accomplice is eliminated from the case,' the other evidence establishes the required connection of the accused with the commission of the offense. *Froman* v. *State*, 232 Ark. 697, 339 S.W. 2d 601 (1960). Corroborating evidence which merely raises a suspicion of guilt is not enough. *Underwood* v. *State*, 205 Ark. 864, 171 S.W. 2d 304 (1943)."

While the writer of this opinion feels that this test is too rigid, nevertheless, I feel bound by the prior decisions of this Court.

If it be determined as a fact that G. W. Stewart was not an accomplice as that term is defined above, there is ample evidence in this record to sustain the conviction of DuBois. If, however, it be found as a fact that Stewart was an accomplice, it is clear that the conviction of DuBois must be reversed. Without the testimony of witnesses Austin and Stewart the record contains no evidence connecting DuBois with the killing of Mack Howell. The only evidence placing DuBois in the State of Arkansas at the time of Mack Howell's killing comes from the testimony of Linda Austin and G. W. Stewart.

In Instruction No. 19 the trial court, without objection, told the jury:

"You are instructed that one may not be convicted of a felony upon the uncorroborated testimony of an

accomplice. You cannot, therefore, convict the defendant on the testimony of an accomplice unless you find such testimony is corroborated by other evidence in the case tending to connect the defendant with the commission of the crime, and the corroboration is not sufficient if it merely shows that the crime was committed and the circumstances thereof, but you are instructed that the amount of such corroborating evidence and its weight, is a matter solely for the jury. And, if you find that such accomplice has been corroborated by evidence, positive or circumstantial, other than the accomplice's own testimony tending to show that the crime was committed and connecting the defendant with its commission, you will be justified in convicting the defendant provided you believe him guilty from all of the evidence in the case beyond a reasonable doubt."

The court also defined an accomplice in another instruction.

This Court is unable to determine whether the finding of guilty by the jury was based upon a finding of fact that either or both Linda Austin and G. W. Stewart were not accomplices or whether it was based upon the finding of fact that both were accomplices, but that there was sufficient corroborative evidence to sustain the conviction.

Upon a new trial we suggest that it would be appropriate for the trial court upon request to give the jury an instruction that would permit it to determine whether Stewart was an accomplice. See *Satterfield* v. *State*, 245 Ark. 337, 432 S.W. 2d 472, where such an instruction was requested but refused by the trial court.

## REASONABLE DOUBT

Over objection, the trial court defined reasonable doubt in Instruction No. 23 as follows:

"The phrase 'beyond a reasonable doubt' should be explained to you, and it means that after a full and fair consideration of all the facts and circumstances proved in the case there naturally arises in your mind, either

out of the evidence or by reason thereof, or on account of the lack of it, a substantial doubt of the defendant's guilt, then that is what the law means by a reasonable doubt. It is not an imaginary or far-fetched doubt to be conjured up in order to allow a guilty man to escape just punishment, but, as stated, it is a shield to protect the innocent from unjust conviction.

The best definition of a reasonable doubt is that it is a doubt that is reasonable and one upon which you yourself would be willing to act in any matter of highest concern to you with which you may come into contact in your everyday walks of life."

We have no hard and fast rule as to language to be employed in defining reasonable doubt. This seems to be true in other jurisdictions. Examination of Words and Phrases, Volumn 36, Pages 495-502, discloses a great variety of phrasing that did not constitute error. In this opinion we do not intend to lay down a fixed rule for definition of the phrase "reasonable doubt." Nevertheless, in *Laird* v. *State,* 251 Ark. 1074, 476 S.W. 2d 811 (1972), the following definition of reasonable doubt was approved:

"Reasonable doubt is not a mere possible doubt, or imaginary doubt, because everything relating to human affairs and depending upon mortal evidence is open to some possible or imaginary doubt; but it is such a doubt as arises from such a candid and impartial consideration of all the evidence in the case as would cause a reasonable and prudent man to pause and hesitate in the graver transactions of life; and a juror is satisfied beyond doubt if from a candid consideration of all the evidence he has an abiding conviction of the truth of the charge."

In the opinion in the *Laird* case this Court corrected what was an obvious typographical error in *Dempsey* v. *State,* 83 Ark. 81, 102 S.W. 704 (1907), where the letter "t" was dropped from the word "mortal."

On a retrial of DuBois it would not be inappropriate for the trial court to instruct the jury in the language ap-

proved in the *Laird* case, but we made it abundantly clear that other appropriate language defining reasonable doubt would not be disapproved by this Court.

## MOTION FOR DIRECTED VERDICT OF NOT GUILTY

The trial court overruled defendant's motion, seasonably made, for a directed verdict of not guilty. Such a motion would have been proper only if: (1) both Linda Austin and G. W. Stewart were accomplices, and (2) there was insufficient other evidence to corroborate their testimony. An examination of the transcript indicates other evidence is available to the prosecution. At a new trial of the defendant, the deficiencies we find in this record may well be supplied. Under this record a remand is proper as was done in *Paschal* v. *State,* 245 Ark. 396, 432 S.W. 2d 879, (1968).

## OTHER POINTS URGED

Numerous other grounds for reversal are urged in the brief filed on behalf of DuBois. This Court has carefully examined all of these and we find them without merit. Comment upon each of the other points raised would add nothing to the judicial literature and would be a waste of judicial time. Indeed, a number of the points raised have been answered by this Court in *O'Neal* v. *State, supra.*

In view of the disposition we make of this case, the alleged prejudicial argument of the prosecuting attorney is not likely to recur.

Accordingly, the judgment is reversed and the case remanded for a new trial.

FOGLEMAN, J. not participating.

HARRIS, C.J. and JONES, J. would affirm.

CARLETON HARRIS, Chief Justice, dissenting. I do not agree with the majority that Linda Austin was an accomplice as a matter of law; to the contrary I think this

was a fact question to be decided by the jury. Mrs. Austin, during her testimony, testified that she was in fear of appellant, and certainly if her acts, or concealment of the crime, were due to fear, she was not an accomplice. We have also said that the mere failure to inform the officers of the law when one has learned of the commission of a crime does not make one an accomplice. *Butt* v. *State*, 81 Ark. 173, 98 S.W. 723. On trial, during cross-examination, Mrs. Austin was asked if she noticed in a newspaper account, following Howell's murder, that the Howell telephone wire had been cut. She answered that she had and the transcript then reveals the following:

"Q. At that point did you go to the police and tell them what you knew about it?

A. I was afraid to.

Q. You were afraid to?

A. Yes.

Q. Because you had aided and abetted in the beginning, hadn't you?

A. No.
Because, as I told them, Gene might hurt some of my family.

Q. And that is the reason you did not go to the police?

A. Yes, sir."

There is other evidence in the record which, in my view, raised a question of fact as to whether Mrs. Austin was an accomplice. The testimony reflected that DuBois had gone to the Howell home to cut the telephone wire, but was first unsuccessful and returned to the house for further tools. From the record:

"Q. Now, at this point knowing that he was going over there to cut those wires and after having given him and knife, and after him going over there and com-

ing back from an unsuccessful mission, you are telling this jury that you went to your closet and looked in your toolbox and handed him a pair of pliers?

A. What am I supposed to do? He's got the gun. What am I supposed to do? Am I supposed to sit there and say, 'Listen here, you don't do this,' and then him shoot me?"

The motive for the crime, as shown by the state, was that Howell, the deceased, had some days earlier made improper advances to Mrs. Austin. Mrs. Austin testified that after DuBois and Stewart left the Austin home, she and her husband went to bed. From the record:

"Q. And you are telling us now that Jerry, the husband of the wife whose honor had been insulted, went to bed?

A. Yes. Why not?

Q. And that you all merely went to sleep?

A. Yes. We didn't think Gene would do anything.

Q. You didn't?

A. No.

Q. He didn't have any reason to do anything, did he?

A. We didn't ask him to do nothing, no.

Q. Did you try to stop him from doing anything?

A. We told him—I plainly asked him—I told him, I said, 'Jerry will talk to Mack himself.' And Gene said, 'No, I will do the talking.'

So far as I knew he was just going to talk to the man.

\*\*\*

I thought Gene was just a big bully. You know, just blowing-off, because he'd said stuff like that before around me."

I agree that there is quite a bit of evidence to indicate that Mrs. Austin was an accomplice, but I think the evidence just cited raises a question of fact for the jury to determine.

To illustrate my view, let me use a hypothetical situation that I consider analogous to the point in question. A defendant is charged with murder, it being alleged that he killed another by shooting him. Five persons testify that they were in the room where the shooting occurred; that they saw the defendant fire the shots; that the individual killed had no weapon and was sitting in a chair at the time. Yet, if the defendant testified that these witnesses were all wrong, and that the person killed was, at the time of the shooting, advancing on him (the defendant) with a knife in his hand, we would have a jury question.

I might also say I am even more of the opinion that the question of whether Stewart was an accomplice was a fact question. However, since the state conceded on trial that Stewart was an accomplice, he must be so considered in determining this appeal.

Because of the finding of this court that Linda Austin, as a matter of law, was an accomplice, I respectfully dissent.