Dagoberto FERNANDEZ *v.* STATE of Arkansas

CR 90-65                                    795 S.W.2d 52

Supreme Court of Arkansas
Opinion delivered September 17, 1990

*Charles A. Potter*, for appellant.

*Steve Clark*, Att'y Gen., by: *Ann Purvis*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant appeals his conviction of possession of cocaine with intent to deliver for which he was sentenced to forty years imprisonment and fined $20,000. His sole argument for reversal· is that the trial court erred in finding he knowingly and voluntarily consented to the search of the vehicle he was driving and in refusing to suppress the cocaine obtained during the search. Although we believe the record supports the validity of the consent search, we need not discuss that issue in detail because appellant lacked standing to challenge the vehicular search in the first place. Because he lacked such standing, we affirm.

On the morning of August 21, 1988, state police officers, Mike Brown and Wallace Martin, while on routine patrol, were passed by a car driven by the appellant. Officer Brown testified that his vehicle was traveling at sixty-five miles per hour and that he clocked appellant's vehicle at sixty-eight miles per hour. Appellant also made an improper lane change after passing the officers. The officers stopped appellant, and after doing so, Brown approached appellant's car while Officer Martin remained with the patrol car. Brown obtained appellant's drivers license and directed Martin to run a check on it. Meanwhile, Brown began writing out a warning ticket for speeding and improper lane change when Martin notified Brown that appellant's drivers license had expired.

According to Brown, he then became suspicious when appellant told him that he had borrowed the car from a friend and that he was en route to Little Rock to pick up his wife. However, appellant did not know the name of the person from whom he had borrowed the car, did not know where he was supposed to pick up his wife and could not even produce a phone number to call in order to contact his wife. At this point, Brown directed the

appellant's passenger, Mr. Lucio Cerda, to step out of the car and asked him where he and appellant were going. Mr. Cerda informed Brown that they were going to Mississippi to buy a wrecked car. While he had been talking to the two men, Brown learned from Martin that the appellant had a criminal history. Brown testified that the men became increasingly nervous during his conversation with them.

Brown said that he began to suspect criminal activity, and accordingly, he informed appellant that he would like to search the vehicle if appellant would consent to the search. Brown then produced a consent-to-search form which outlined in English and Spanish the individual's rights with respect to a consensual search.

At this point, substantial disparity exists between appellant's and the officers' versions of what then took place. In sum, the officers testified they read the entire consent search form to appellant in English and appellant, who spoke good English, also read the rights portion of the form which was in Spanish. Brown testified appellant indicated he understood the search form completely. Appellant, on the other hand, claimed the search form was never read to him and that he could not read English and could only "kind of" read Spanish. He further asserted he did not understand the form or the English words added to it providing the officers could search the entire car.[1] The officers' and appellant's testimonies also conflicted as to whether appellant was threatened with incarceration if he refused to sign the consent form.

Relevant to the standing issue before us, both appellant and Mr. Cerda testified that the car belonged to neither of them. Appellant testified that he merely accompanied Mr. Cerda on the trip in order to see his girlfriend in Little Rock and to help Mr. Cerda drive. He did not know the car's owner or where Mr. Cerda had gotten the car. Appellant said that, at the time he was stopped, he had relieved Cerda from driving and had been driving

---

[1] After hearing the conflicting versions of what occurred, the trial judge, in refusing to suppress the evidence, explained that he believed both appellant and Mr. Cerda understood the English language, pointing out that Cerda had answered a question put to him by appellant's counsel *before* the court interpreter related the question in Spanish.

for only twenty minutes. Mr. Cerda claimed that he had borrowed the car from his boss, whom Cerda thought owned it, but Cerda further related that he has since been sued by the car's real owner. Neither appellant nor Mr. Cerda asserted any ownership claims to the seized cocaine.

In this matter, the appellant bore the burden of proving not only that the search of the car he drove was illegal, but also that he had a legitimate expectation of privacy in that car. *Rawlings* v. *Kentucky*, 448 U.S. 98 (1980); *Rakas* v. *Illinois*, 439 U.S. 128, 131, n. 1 (1978); *see also Rodriquez* v. *State*, 299 Ark. 421, 773 S.W.2d 821 (1989); *Tippitt* v. *State*, 294 Ark. 342, 742 S.W.2d 931 (1988). A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. *Rakas*, 439 U.S. at 134. Here, appellant failed to show that he had a legitimate expectation of privacy in the car. As previously noted, the proof revealed either that appellant borrowed the car from a friend whom he could not identify, or, in contrast to that story, that Cerda had borrowed the car, but that neither appellant nor Cerda actually knew who owned the car. In any event, appellant never showed that he or Cerda lawfully owned or possessed the car. Because appellant failed to establish his expectation of privacy in the searched automobile, we conclude he had no standing to challenge the officers' search as unconstitutional.

Affirmed.