Dewayne R. LITTLEPAGE *v.* STATE of Arkansas

CR 93-471                                    863 S.W.2d 276

Supreme Court of Arkansas
Opinion delivered October 11, 1993

*Q. Byrum Hurst, Jr.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Teena L. White*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The appellant, Dewayne R. Littlepage, was convicted of possession of methamphetamine with intent to deliver and sentenced to a term of forty years and a fine of $25,000; possession of drug paraphernalia and sentenced to ten years and a $10,000 fine; and being a felon in possession of a firearm and sentenced to six years imprisonment and $10,000. Littlepage was also found guilty of possession of marijuana and sentenced to one year imprisonment and fined $1,000. All the sentences are to run consecutively. He raises four issues on

appeal, none of which has any merit.

Dewayne R. Littlepage, along with a passenger, Fred McCaslin, was driving a rented, white Cadillac car bearing Texas tags in Malvern, Arkansas. While on patrol, Officer Ron Ball with the Arkansas State Police followed the automobile through a traffic light as the car made a right turn out of the center lane without a turn signal. Officer Ball followed and called for a registration check to determine the ownership of the car and learned that it was a rental car out of Dallas.

As Officer Ball followed the car further, he observed it hit the fog line, the white line on the right-hand side of the road, at least twice from the time it turned onto Main Street. He stopped the car and asked the driver, Littlepage, for his driver's license, which had expired about two years earlier. Littlepage produced the rental agreement, which revealed that neither Littlepage nor his passenger was the legal driver.

Officer Ball placed Littlepage under arrest for the expired driver's license, patted him down, and placed him in the back seat of his police car. Officer Ball then walked to the right side of the Cadillac and shined his flashlight inside the car while watching the passenger in the front seat. The officer observed a nylon holster with what appeared to be the butt of a pistol sticking out from under the driver's seat. He removed the weapon, which was fully loaded, and got the passenger out of the car. Informed by Littlepage that he was on probation for a felony, Officer Ball gave him his *Miranda* warnings and arrested him for being a felon in possession of a firearm. The officer then looked under the front seat for any additional weapons and found drugs and drug paraphernalia.

Although no drugs were found on Littlepage's person or under his seat in the car, his fingerprints were found on an Arkansas Bank & Trust envelope containing three plastic bags with a powder residue. Tests by the Crime Lab revealed that the items seized from the car contained cocaine, methamphetamine and marijuana.

Prior to trial, Littlepage filed a motion to suppress the articles found in the car arguing that the search and stop had been pretextual. In support of this motion, Littlepage revealed that

Officer Ball had received a phone call earlier in the week from a confidential informant, relating that a white Cadillac with Texas tags might be used in the course of some kind of drug activity. Littlepage also emphasized that, in Officer Ball's reports on the arrest, he stated that one reason he stopped Littlepage was because he hit the fog line at least twice and had crossed the solid white line. The court denied the motion to suppress.

## I. Sufficiency of the Evidence

For his first argument on appeal, Littlepage contends that the evidence was insufficient to prove that he was in constructive possession of the drugs, drug paraphernalia, and two guns discovered in the vehicle. We disagree.

A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Williams* v. *State*, 298 Ark. 484, 768 S.W.2d 539 (1989). The test for determining the sufficiency of the evidence is whether there is substantial evidence to support the verdict. *Ricketts* v. *State*, 292 Ark. 256, 729 S.W.2d 400 (1987). On appeal, this court reviews the evidence in the light most favorable to the appellee and sustains the conviction if there is any substantial evidence to support it. *Abdullah* v. *State*, 301 Ark. 235, 783 S.W.2d 58 (1990). Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Hodge* v. *State*, 303 Ark. 375, 797 S.W.2d 432 (1990); *Jones* v. *State*, 269 Ark. 119, 598 S.W.2d 748 (1980).

Evidence of Littlepage's possession of drugs, drug paraphernalia, and weapons is more than sufficient. Officer Ball testified at trial that during the search incident to Littlepage's arrest for the expired driver's license, he noticed in plain view a black nylon-style holster, that appeared to contain a pistol, sticking out from under the driver's seat. After opening the driver's door, he examined the pistol and found it contained a fully loaded clip. In continuing his search of the car, ostensibly for other weapons, Officer Ball discovered marijuana and a Liquid Wrench can. Noticing that the bottom of the Liquid Wrench can unscrewed, he opened it and found four Ziplock bags containing white powder, two more Ziplock bags with white powder, one Ziplock bag with a hand rolled cigarette, three Ziplock bags containing vegetable material, one vial containing a liquid, four

"rocks," and four syringes.

Thereafter, an inventory search of the car was conducted, and the police found a loaded .45-caliber weapon and a fake battery with a storage compartment in the trunk. Another bag containing white powder was found next to the gas cap. Police also found a pharmacy bag containing some syringes in the console next to the driver's seat; as well, a bank envelope holding three Baggies covered in white powder residue was also found. Littlepage's fingerprints matched those found on the envelope.

Jerry Buck, a chemist from the State Crime Lab, testified that the white powdery substance found in the many containers in the vehicle was cocaine. Also found were several pill bottles which contained methamphetamine, codeine, and valium. Marijuana was identified, as well.

On appeal, Littlepage submits that the evidence at trial was insufficient to connect him with ownership of the drugs, drug paraphernalia, and guns. We disagree.

In order to prove a defendant is in possession of a controlled substance, constructive possession is sufficient. *Osborne* v. *State*, 278 Ark. 45, 643 S.W.2d 251 (1982). Neither are exclusive nor actual, physical possession of a controlled substance necessary to sustain a charge. *Cary* v. *State*, 259 Ark. 510, 534 S.W.2d 230 (1976). Constructive possession can be implied when it is in the joint control of the accused and another. *Osborne, supra*. However, joint occupancy alone is not sufficient to establish possession or joint possession. There must be some additional factor linking the accused to the contraband. *Id*. In *Plotts* v. *State*, 297 Ark. 66, 729 S.W.2d 793 (1988), we enumerated factors that sufficiently link an accused to contraband found in a car jointly occupied by more than one person, including the contraband's being (1) in plain view; (2) on the defendant's person or with his personal effects; (3) found on the same side of the car seat as the defendant or in immediate proximity to him; or that the accused (4) owned the vehicle in question or exercised dominion and control over it; and (5) acted suspiciously before or during arrest. *Plotts, supra; See also Bailey* v. *State*, 307 Ark. 448, 821 S.W.2d 28 (1991)

Applying these elements to the facts at hand, it is clear

that Littlepage was in constructive possession of the drugs, drug paraphernalia, and firearms. First of all, the illicit articles were found in the immediate proximity of its driver, Littlepage, at the time of the arrest. Secondly, Littlepage exercised dominion and control of the car as its driver, his fingerprints were found on an envelope containing cocaine residue, and the loaded pistol was found underneath his seat. Drug paraphernalia, specifically syringes, was found in the console next to him. Taken together, these facts specifically link him to the contraband and prove that he was in constructive possession of the drugs, paraphernalia and firearms.

In sum, we have no hesitancy in holding that the evidence was sufficient to convict on all charges.

## II. Legality of Search

In a motion to suppress the results of the search of the car, Littlepage contended that the officer stopped him because of the confidential informant's tip and not because he had violated a traffic law; therefore, he claims, the stop was pretextual, rendering the search and its results invalid. Since Littlepage has failed to show that he had an expectation of privacy in the rental car, we do not reach the issue of the constitutionality of the search.

After hearing the testimony of Officer Ball, the trial court denied the motion to suppress, explaining:

> The motion is denied. There was probable cause for the stop and the arrest. The information received by the officer from the confidential informant had nothing to do with the stop and nothing to do with the arrest. It was based on an illegal turn. This was standard procedure for the State Police. This was a car from out of state, one with which the officer was not familiar so he called in for an identification on that, which he got. The driver's license of the defendant was expired and there was a gun in plain sight. The officer was aware at this time that Littlepage was on probation. That constitutes a violation. A limited search was then done incident to arrest. All of those things were valid and allowable under the Fourth Amendment. An inventory search was then done at that time after the officer knew that the vehicle was going to be taken into custody. All of

the regular procedures were followed, as practiced by the State Police. These items obtained in the search are therefore admissible into evidence if they are relevant to the case.

The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers and effects and against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The rights secured by the Fourth Amendment are personal in nature. *Rakas* v. *Illinois*, 439 U.S. 128 (1978). Accordingly, before an appellant can challenge a search on Fourth Amendment grounds, he must have standing. Whether an appellant has standing depends upon whether he manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognize that expectation as reasonable. *See United States* v. *Erwin*, 875 F.2d 268 (10th Cir. 1989).

Here, Officer Ball admitted that he received information a few days prior to the arrest that there was a white Cadillac with a Texas license plate whose occupant, Littlepage, was connected with drugs and might be coming to the Malvern area. Nevertheless, Officer Ball stated under oath that he had stopped Littlepage on the night in question because of the traffic violation and not as a result of the informant's tip.

In response, the State argues that Littlepage did not have an expectation of privacy in the Cadillac because it was not his car, and, therefore, he could not have a Fourth Amendment right to challenge the search. This argument is correct.

In order to assert his Fourth Amendment rights, Littlepage must at least show that he gained possession from the owner or someone with authority to grant possession. *See State* v. *Barter*, 310 Ark. 94, 833 S.W.2d 372 (1992). In *Barter*, the appellant was stopped while driving a rental car contracted to another individual. When Barter failed to show that he lawfully possessed the car, we held that he had failed to establish a

legitimate expectation of privacy in the car searched by the police.

Similarly, in *Fernandez v. State*, 303 Ark. 230, 233, 795 S.W.2d 52 (1990), we said that the appellant had failed to show that he had a legitimate expectation of privacy in a car when he could not show that either he or his passenger owned or lawfully possessed the car in which the search was conducted.

In this matter, Littlepage bore the burden of proving not only that the search of the car he drove was illegal, but also that he had a legitimate expectation of privacy in that car. *Fernandez, supra, citing Rawlings v. Kentucky*, 448 U.S. 98 (1980). The proof revealed that the car Littlepage was driving was rented to Rebecca Jones, who was not present at the time of the arrest. Ms. Jones was the only authorized driver in the rental agreement. Littlepage claimed that Ms. Jones had rented the car for him in Dallas for his use when his own car had broken down, but there was no showing that this assertion had any validity. Besides, the rental agreement authorizing Ms. Jones to drive the car had expired two days prior to Littlepage's traffic stop and arrest. Clearly, Littlepage failed to establish his expectation of privacy in the searched automobile. Accordingly, we conclude that Littlepage had no standing to challenge the officer's search as unconstitutional. Because Littlepage had no expectation of privacy in the car, the issue of whether or not this was a pretextual search is of no moment.

### III. Severance of Offenses

Prior to trial, Littlepage requested that the offenses be severed on the grounds that to try all of them together would be confusing to the jury and that evidence of some offenses, particularly the felon in possession of a firearm count, would be used as evidence against him on other counts. The trial court denied the motion but agreed, at the State's suggestion, to bifurcate the firearm possession charge, keeping evidence of the prior conviction from the jury until the sentencing phase. Nevertheless, Littlepage claims that to refuse to sever completely the felon in possession of a firearm charge from the other charges was error.

Littlepage's argument is based on the fact that, even though

the felon in possession charge was not mentioned to the jury during the guilt/innocence phase, the jury still heard evidence concerning the two weapons found in the car along with the drugs.

■ This argument is meritless. Denial of a motion to sever is proper if the offenses are part of a single scheme or plan or if the same body of evidence would be offered to prove each offense. *Henry* v. *State*, 309 Ark. 1, 828 S.W.2d 346 (1992). Clearly, the judge sought to protect Littlepage from prejudice by bifurcating the proceedings. This adequately protected him.

### IV. Alleged Prosecutorial Misconduct

■ For his last argument, Littlepage claims that some of the prosecutor's remarks during closing argument require that the conviction be reversed. Littlepage's attorney did make objections to the prosecutor's remarks, but he neither asked for an admonition to the jury nor for a mistrial. Under the circumstances, Littlepage has no grounds to complain on this issue.

The basis of this issue is the prosecutor's closing argument in which he stated, in pertinent part:

> Prosecutor: Everything in this case points to Dewayne Littlepage's having been a drug dealer. I have no doubt that Dewayne Littlepage also used some of those drugs but that does not absolve him of the fact that he is also a drug dealer. They had this can for the concealment, they had the battery for concealment. If you want Malvern, Arkansas to be a cruising place for all the drug dealers from Hot Springs, Little Rock and Pine Bluff, all you have to do -
>
> Defense - Your Honor, I object to that. I don't think the statement is based on any evidence that's in and he's trying to inflame the jury.
>
> Court: Ladies and gentlemen, the only thing I can tell you is that if either attorney says anything to you having no real basis in the evidence, disregard it.

The prosecutor then stated again that "[i]f you want Malvern. . .to be the cruising place for the drug dealers from Hot Springs, Little Rock and Pine Bluff, just give him a little tap on the wrist, about 10 years." Littlepage failed to object to this second reference to out-of-town drug dealers.

Littlepage also objected when the prosecutor said, "What did Ron Ball tell you? He said that two or three days before he had received information about a white Cadillac being driven by somebody named Littlepage." At that point, the defense asked for a mistrial stating that this was information that had not been presented to the jury during the course of the trial. The trial court disagreed but again admonished the jury that "anything that either attorney says which you find has no basis in the evidence, you should disregard if it's during their opening statement or their argument."

As for the first statement that allegedly constituted prosecutorial misconduct, it was harmless, and Littlepage failed to ask for either an admonition or a mistrial when he objected. The court, in response to his objection, reminded the jury that remarks of counsel are not evidence and unless supported by evidence should be disregarded. This admonition cured any possible error. *See Miller* v. *State*, 309 Ark. 117, 827 S.W.2d 149 (1992). Besides, this court has said that counsel is to be given some leeway in opening and closing remarks, and counsel are free to argue every plausible inference which can be drawn from the testimony. *Abraham* v. *State*, 274 Ark. 506, 625 S.W.2d 518 (1981). The trial court has a wide latitude of discretion in controlling the arguments of counsel, and its rulings in this regard are not overturned in the absence of clear abuse. *Cobbs* v. *State*, 292 Ark. 188, 728 S.W.2d 957 (1987). The test on appellate review is whether there was a manifest abuse of discretion by the judge in failing to properly act on an objection to improper remarks. *Shaw* v. *State*, 271 Ark. 926, 611 S.W.2d 522 (1981).

As for the second instance of alleged prosecutorial misconduct, Littlepage did actually ask for a mistrial. Yet, a mistrial is an extreme remedy which should be granted only where an error is so prejudicial that justice cannot be served by continuation of the trial. *Combs* v. *State*, 270 Ark. 496, 606 S.W.2d 61 (1980). Although the prosecutor's statement in this regard, i.e. that Ron Ball had received information prior to the arrest that Littlepage was coming to Arkansas, was outside the evidence presented to the jury during the trial, the judge's admonition cured any possible error.

Accordingly, Littlepage's conviction is affirmed.