Corinthian McCOY *v.* STATE of Arkansas

CR 96-6                                                     925 S.W.2d 391

Supreme Court of Arkansas
Opinion delivered June 24, 1996

*Joe Kelly Hardin*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Deputy Att'y Gen., Sr. Appellate Advocate for appellee.

DONALD L. CORBIN, Justice. Appellant, Corinthian McCoy, was convicted by a jury of first-degree murder and attempted second-degree murder, and sentenced by the Saline County Circuit Court to life in the Arkansas Department of Correction. McCoy appeals the circuit court's judgment of conviction, and this court has jurisdiction of the appeal pursuant to Ark. Sup. Ct. R. 1-2(a)(2). McCoy raises two points on appeal: (1) The trial court erred in allowing the prosecution to introduce items seized in an illegal search of appellant's vehicle; and (2) the trial court erred in allowing the prosecution to introduce appellant's custodial statement, as it was involuntary and taken without regard to appellant's request for an attorney. We affirm.

In the early-morning hours of August 6, 1994, a shooting occurred at Jimmy Dirden's Club in Benton, Arkansas, which resulted in the death of Willie Mills and the injury of Raymond Lewis. Benton Police officers discovered a piece of metal in the club's parking lot that was similar to a .22 caliber bullet. Raymond Lewis, who suffered a gunshot wound to the leg, told officers that a black male driving a light-colored big car, such as an Oldsmobile or a Buick, left Dirden's and began shooting from inside his vehicle into a crowd of people standing outside the club. Lewis told the officers that the vehicle driven by the shooter had no license plate,

and that the man who did the shooting was kin to Demetrius Woods.

Officers spoke to Demetrius Woods, who stated that he was present when the crime occurred and that it was his cousin Corinthian who did the shooting. Woods told police that he did not know Corinthian's last name, but that he did know that Corinthian had recently received a traffic ticket for no vehicle license in Alexander or Bryant, Arkansas. Woods also stated that at the time of the incident, Corinthian was driving a big, light-colored car, possibly an Oldsmobile, which had no license plate.

Investigating officers subsequently located the Arkansas State Police officer who issued the traffic ticket to the individual known to the officers only as "Corinthian." A copy of the traffic citation, which was written for no vehicle license, revealed that the driver of the vehicle was identified as Corinthian McCoy and that the vehicle driven was a white Oldsmobile. Upon having identified appellant as the suspect, officers located appellant's residence in Little Rock, Arkansas, and arrested him later that same day of the shooting. Officers also located the vehicle in question at appellant's residence and identified it as a 1980 light gray Oldsmobile Delta 88 bearing no license plate. Upon his arrest, appellant was interviewed by a police detective and denied any involvement in the shooting. Officers seized the vehicle from appellant's residence and later conducted a search of its contents pursuant to a search warrant. The only evidence of the crime found during the search of the vehicle was a .22 caliber bullet.

Prior to appellant's trial, a hearing was conducted on the motions to suppress appellant's statement and the evidence recovered in the search. After hearing the testimony presented, the trial court denied appellant's motion to suppress the physical evidence, stating that there was sufficient identification of the vehicle in the affidavit to support application for the search warrant. After reviewing the contents of the statement itself, the trial court also denied appellant's motion to suppress the custodial interview.

### I. Search of the Vehicle

Appellant argues that the trial court erred in failing to suppress the evidence found in a search of the vehicle appellant was driving on the night of the shooting. Specifically, appellant argues that the affidavit for search warrant insufficiently identified the proper vehi-

cle to be searched, and that the trial court erred in allowing a witness to testify beyond the information contained in the affidavit. The state argues that appellant lacked standing to challenge the search as he did not present any proof that he owned or legally possessed the automobile. We agree.

■ It is well settled that a proponent of a motion to suppress bears the burden of establishing that his Fourth Amendment rights have been violated. *Rockett v. State*, 319 Ark. 335, 891 S.W.2d 366 (1995) (citing *Rakas v. Illinois*, 439 U.S. 128 (1978)). Fourth Amendment rights are personal in nature. *Rockett*, 319 Ark. 335, 891 S.W.2d 366; *State v. Hamzy*, 288 Ark. 561, 709 S.W.2d 397 (1986). The pertinent inquiry regarding standing to challenge a search is whether a defendant manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognize that expectation as reasonable. *Littlepage v. State*, 314 Ark. 361, 863 S.W.2d 276 (1993), (citing *United States v. Erwin*, 875 F.2d 268 (10th Cir. 1989)). This court will not reach the constitutionality of a search where a defendant has failed to show that he had an expectation of privacy in the object of the search. *Littlepage*, 314 Ark. 361, 863 S.W.2d 276. A defendant has no standing to question the search of a vehicle owned by another person, unless he can show that he gained possession from the owner or from someone who had authority to grant possession. *Id.*; *State v. Barter*, 310 Ark. 94, 833 S.W.2d 372 (1992).

In the hearing below, appellant presented no proof whatsoever that he had a legitimate expectation of privacy in the car. Appellant's argument to the trial court attacked the search warrant on the basis that there was no evidence linking the car found at his residence with the car involved in the crime; however, counsel's questions and remarks indicated a different line of attack, specifically, that the car was not appellant's. Through cross-examination of Officer Jimmy Holiman, appellant's counsel elicited testimony to the effect that the officer had no evidence to indicate that appellant was the actual owner of the vehicle and that a check of the car's VIN (vehicle identification number), showed the owner as Irma L. Brooks. Through this line of questioning, appellant's counsel all but admitted that appellant had no expectation of privacy in the vehicle.

■ Appellant took the stand during the suppression hearing, but his testimony was limited to the subject of his custodial statement. Appellant offered no proof that the car was his or that he

lawfully possessed it. Because appellant failed to establish lawful possession of the car, we conclude he had no standing to challenge the search of the car. For that reason, we do not reach the merits of his argument on appeal, and we affirm the trial court's ruling.

## II. Custodial Statement

For his second point, appellant argues that the police obtained a custodial statement from him in violation of his rights under the Fifth and Sixth Amendments. Appellant asserts that his waiver of *Miranda* rights was not made voluntarily, that his request for counsel was denied, and that he made the statement under duress and threats from the officer. We do not find any of these arguments persuasive, and therefore we affirm.

When voluntariness of a statement is an issue, we make an independent determination based on the totality of the circumstances surrounding the statement. *Misskelley* v. *State*, 323 Ark. 449, 915 S.W.2d 702 (1996). We will reverse the ruling of the trial court only if that ruling was clearly against the preponderance of the evidence. *Magar* v. *State*, 308 Ark. 380, 826 S.W.2d 221 (1992). A custodial statement is presumed involuntary, and the burden is on the state to show that the statement was voluntarily given. *Misskelley*, 323 Ark. 449, 915 S.W.2d 702. A confession based on threats of harm is inadmissible. *Duncan* v. *State*, 291 Ark. 521, 726 S.W.2d 653 (1987). In making a determination of whether a statement was voluntarily made, this court will consider many factors, among which are the age, education, and intelligence of the accused; the length of questioning; the advice or lack of advice on constitutional rights; the repeated or prolonged nature of questioning; and the use of mental or physical punishment. *Misskelley*, 323 Ark. 449, 915 S.W.2d 702.

During the suppression hearing, appellant and Sergeant Dan Garner of the Benton Police Department were the only persons to testify, and their testimony was conflicting. This court has previously held that conflicts in testimony are for the trial court to resolve, as it is in a superior position to determine the credibility of the witnesses. *Duncan*, 291 Ark. 521, 726 S.W.2d 653. The issue of whether appellant was threatened is a credibility issue. *Stone* v. *State*, 290 Ark. 204, 718 S.W.2d 102 (1986). Based on the testimony presented, we cannot say the trial court's determination that the statement was voluntary was clearly against the preponderance of

the evidence.

Appellant testified that he was twenty-one years old at the time of the interview, that he was advised of his rights, and that he asked for an attorney but the officer told him he would get one when he went to court. Appellant further testified that he felt threatened when the officer informed him that there was a warrant for his arrest and that appellant would be arrested at the conclusion of the interview. On cross-examination, appellant conceded that he had previously been interviewed by the police on two occasions, and that during both those interviews he was read his rights and he understood them. Appellant admitted that during the present interview he understood that he did not have to say anything at all without a lawyer present, but that he went ahead and gave a statement because he felt threatened. Appellant maintained that he only gave a statement because the officer told him "you're going to jail anyway," and that by the officer's statement, he assumed that if he made a statement the officer would let him go.

The officer's testimony and the transcript of the taped interview contradict appellant's version of what took place. Sergeant Garner testified that he read appellant his *Miranda* rights from a statement of rights form prior to questioning appellant. Garner stated that appellant signed the form and appeared to understand his rights. Garner stated that before the interview began, appellant asked if Garner thought appellant needed an attorney, and that Garner responded by telling appellant that it was up to him (appellant) to decide whether he felt like he needed an attorney. Garner stated that he informed appellant that he had an arrest warrant for appellant, and that he was going to arrest appellant whether he made a statement or not.

The state introduced into evidence the statement-of-rights form signed by appellant as well as the transcript of the taped interview. The statement-of-rights form reflects that appellant not only signed his name at the bottom of the document, but that he also responded "Yes" to each of the rights read to him and that he put his initials by each response. The transcript of the interview reflects that Garner informed appellant that there were enough statements and enough witnesses to obtain the bench warrant, and that he was going to arrest appellant regardless of whether appellant gave a statement. The transcript also reflects that Garner stated that he wanted to hear appellant's side of the story and that appellant had

the right to talk to an attorney before giving a statement, but that appellant would be arrested and charged whether he talked to the officer or not. Appellant then gave a statement denying any involvement in the shooting and, furthermore, denying that he had even been in Benton on that night. At no point during the interview, which lasted only twelve minutes, did appellant inculpate himself in the crime.

■ After careful consideration of the matter, we find that appellant voluntarily waived his *Miranda* rights, that he gave the statement voluntarily without the presence of an attorney, and that no threats or coercion were used on appellant. We find it particularly persuasive that appellant had been in this situation twice before and that, by his own admission, he understood he did not have to give a statement without an attorney present. There was no evidence that appellant was so lacking in either education or intelligence that he did not understand what he was doing. In fact, appellant was twenty-one years old at the time of the interview, hardly an age at which he was incapable of making such a decision. Moreover, the duration of the interview itself was a mere twelve minutes.

■ As for the allegations of threats or duress, we find that the officer's statement that he was going to arrest appellant regardless of whether appellant told his side of the story does not rise to the level of being a threat. To the contrary, it indicates to us that the officer had already planned to arrest appellant and that appellant's actions in choosing either to give a statement or not to give a statement would not have changed the officer's plans. There is no evidence at all to support appellant's claim that he thought that if he gave a statement the officer would release him without arresting him. Appellant's claim that he felt threatened or pressured into giving a statement is especially unpersuasive in light of the fact that his statement was exculpatory in nature and amounted to nothing more than a blanket denial of the allegations. Based on all of the foregoing, we find that the statement was voluntarily given and that the trial court did not err in denying appellant's motion to suppress the statement.

In accordance with Rule 4-3(h) of the Arkansas Supreme Court Rules, the record has been reviewed for adverse rulings objected to by appellant but not argued on appeal, and no error was found. For the aforementioned reasons, we affirm the judgment of conviction.

Affirmed.

DUDLEY, J., not participating.