Sean William STARKS *v.* STATE of Arkansas

CA CR 00–1025                                    49 S.W.3d 122

Court of Appeals of Arkansas
Division II
Opinion delivered June 27, 2001

*John David Myers*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Judge. Sean William Starks, a.k.a. Shawn Starks, was convicted in a Pulaski County jury trial of possession of cocaine with intent to deliver for which he was sentenced to forty years in the Arkansas Department of Correction. On appeal, Starks argues that the trial court erred in denying his motion to suppress evidence that was seized without a search warrant. We agree and reverse and remand for a new trial.

At Starks's suppression hearing, Ty Tyrell, a patrol sergeant with the Little Rock Police Department, testified that he was called to a shooting at a residence located at 905 Adams on February 9, 2000, at 8:15 p.m. He stated that upon his arrival, he observed a great deal of broken glass and numerous holes in both the window glass and walls, apparently from bullets entering and exiting the house. According to Sgt. Tyrell, he was met at the front door by an individual named Marcus Allen, who opened the door, pointed

toward the rear of the house, and stated, "He's in the back." Sgt. Tyrell entered the residence and saw Starks, who had been shot in the neck, lying in the doorway of the "back bedroom." Sgt. Tyrell began to "secure" the scene and immediately found a nine-millimeter pistol and several nine-millimeter shell casings. He then found a .40 caliber shell casing, and in the back bedroom he found a "medium" sized cloth pistol case that was unzipped and empty. An infant child was also found in the residence. Sgt. Tyrell stated that after the ambulance arrived and Starks was transported to the hospital, he went back into the back bedroom where he had found the pistol case to search for the .40 caliber pistol. He claimed that he was concerned that children would be reentering the residence and felt that he had to find the gun. According to Sgt. Tyrell, when he reentered the bedroom, he noticed that one corner of the bed was not laying flat. When he investigated, he found a silver shoe box holding up the corner of the bed. He opened the box and found several packages of what appeared to be cocaine and marijuana. He asserted that the box was so full of cocaine that it could not be completely closed.

Sgt. Tyrell stated that when he arrived, only two males, Starks and Allen, and an infant child were in the house. He also testified that he completed "processing the scene" before allowing the family members, which included at least one child, back into the house. The trial judge denied the suppression motion, and Starks proceeded to trial.

Stark's sole argument on appeal is that the trial court erred in denying his motion to suppress evidence seized without a search warrant. He contends that it is uncontroverted that the drugs in question were seized without a warrant, and it is well settled that every warrantless search and seizure is unreasonable unless it is shown that it fits within one of the enumerated exceptions. Starks argues that the purported search for the .40 caliber pistol was not justified pursuant to Rule 14.3 of the Arkansas Rules of Criminal Procedure because this was not a situation in which a delay in finding the gun would result in imminent loss of life or serious bodily injury. He notes that the premises were already secure and only contained police personnel. He also argues that the search was not justified pursuant to Rule 14.4, the plain-sight exception, because Sgt. Tyrell had to reenter the bedroom to find the contraband.

As a threshold issue, citing *Richard v. State*, 64 Ark. App. 177, 983 S.W.2d 438 (1998), and *Ramage v. State*, 61 Ark. App. 174, 966 S.W.2d 267 (1998), the State argues for the first time on appeal that

Starks failed to establish that he had standing to challenge the search. We find that the State's argument is not persuasive.

■ The rights secured by the Fourth Amendment are personal in nature. *Littlepage v. State*, 314 Ark. 361, 863 S.W.2d 276 (1993). Accordingly, before an appellant can challenge a search on Fourth Amendment grounds, he must have standing. *Id*. Whether an appellant has standing depends upon whether he manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognize that expectation as reasonable. *Id*. There has evolved a line of cases that require an appellant to prove that he has standing to challenge a search. *See, e.g., id.; Whitham v. State*, 69 Ark. App. 62, 12 S.W.3d 638 (2000); *Richard v. State, supra;* and *Ramage v. State, supra*.

■ We are mindful that this court has held in *Richard v. State* and *Ramage v. State* that it is permissible to raise the issue of standing for the first time on appeal. However, having considered the issue, we cannot say that Starks has failed to establish that he had a subjective expectation of privacy in the residence. In *Davasher v. State*, 308 Ark. 154, 823 S.W.2d 863 (1992), the supreme court stated that an individual does not have standing to contest a warrantless search and seizure if there is no showing that the person owned or leased the searched premises or maintained any control over the premises. *See also Parette v. State*, 301 Ark. 607, 786 S.W.2d 817 (1990). Although Starks did not testify at his suppression hearing, his standing to challenge the search was nonetheless established through Sgt. Tyrell's testimony to the effect that Starks and Allen were in control of the dwelling on the night in question. Under these facts, both Starks and Allen could be found to have standing to challenge the search. Moreover, in *Fouse v. State*, 73 Ark. App. 134, 43 S.W.3d 158 (2001), we held that the State can waive the right to raise a standing challenge on appeal by making affirmative declarations to the trial court that are inconsistent with such a challenge. Here the State also prosecuted Starks for maintaining a drug premises, and pursuing this charge is entirely inconsistent with the position that the State now takes[1]. Furthermore, the instant case is distinguishable from *Richard v. State* and *Ramage v. State,* in that we cannot say from our review of the record as a whole that there

---

[1] In pertinent part, the offense of maintaining a drug premises is codified as follows:

It is unlawful for any person to . . . knowingly keep or maintain any store, shop, warehouse, or other structure or place or premise, which is resorted to by persons for the purpose of using or obtaining these substances or which is used for keeping them in violation of subchapter 1-6 of this chapter.

Ark. Code Ann. § 5-64-402(a)(3) (Repl. 1997).

was no basis for finding that Starks had a subjective expectation of privacy. Indeed, the facts clearly cut the other way in that Crystal Starks, who by the time of the trial had married Starks, testified that, on the night in question, Starks was babysitting their daughter in her residence. She stated that Starks did not live in the house that she was renting, but he was a frequent overnight guest. We therefore reject the State's standing argument and reach the merits of Starks's appeal.

■■ When we review a ruling on a motion to suppress, we make an independent determination based on the totality of the circumstances, viewing the evidence in the light most favorable to the State, and reverse only if the ruling is clearly against the preponderance of the evidence. *Norman v. State*, 326 Ark. 210, 931 S.W.2d 96 (1996). The Fourth Amendment protects an individual's legitimate expectation of privacy against unreasonable searches and seizures, and entry into a dwelling in which an individual has a reasonable expectation of privacy must be viewed as illegal unless the State established the availability of an exception to the warrant requirement. *Wofford v. State*, 330 Ark. 8, 952 S.W.2d 646 (1997).

■ We find that the police unquestionably were justified in entering the dwelling as Starks lay bleeding on the floor. However, the circumstances changed when Starks was taken away by ambulance. After that point, Sgt. Tyrell's reentry into the back bedroom to look for the .40 caliber gun exceeded the scope of his emergency duties. While Sgt. Tyrell expressed his intention to make the premises safe for small children before he turned it over to the "family members" waiting outside, his motivation did not justify searching the house for a weapon under the supreme court's analysis of the emergency exception discussed in *Wofford v. State, supra.*

■■ Under the emergency exception, a warrantless entry into a home may be upheld if the State shows that the intruding officer had "reasonable cause" to believe that the home contains:

> (a) individuals in imminent danger of death or serious bodily harm; or

> (b) things imminently likely to burn, explode, or otherwise cause death, serious bodily harm, or substantial destruction of property; or

> (c) things subject to seizure which will cause or be used to cause death or serious bodily harm if their seizure is delayed.

Ark. R. Crim. P. 14.3. Any search that follows the emergency entry may be upheld under this rule only if the search was "reasonably necessary for the prevention of such death, bodily harm, or destruction," *id.,* and is "strictly circumscribed by the exigencies" that necessitated the emergency entry in the first place. *Wofford v. State,* 330 Ark. at 19, 952 S.W.2d at 651. Moreover, there must be a direct relationship between the area to be searched and the emergency. *Id.*(citing with approval *People v. Mitchell,* 347 N.E.2d 607 (N.Y. 1976)). Here, we did not have imminent harm, but rather potential or speculative harm. Sgt. Tyrell was not searching for a time bomb, but rather a firearm, that may or may not be present, and if present, may or may not be loaded, and if present and loaded, may or may not have been later found by a child, who may or may not have been inclined to pick it up and fire it, if she was even physically able to do so. Because Sgt. Tyrell's search of the residence exceeded the scope of the intrusion that was authorized by Starks's need for emergency medical attention, the trial court erred in failing to suppress the evidence seized pursuant to that illegal search. *See Evans v. State,* 33 Ark. App. 184, 804 S.W.2d 730 (1991).

Reversed and remanded.

GRIFFEN and VAUGHT, JJ., agree.