Terrell Jamaal TRAVIS *v.* STATE of Arkansas

CA CR 05-999                                233 S.W.3d 705

Court of Appeals of Arkansas
Opinion delivered April 12, 2006

*Gant & Barlow LLP,* by: *R. Derek Barlow,* for appellant.

*Mike Beebe,* Att'y Gen., by: *Brad Newman,* Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. Appellant Terrell Jamaal Travis was convicted by a jury of possession of cocaine with intent to deliver, possession of marijuana with intent to deliver, and possession of drug paraphernalia. He was sentenced to fifty-five years in prison. On appeal, Mr. Travis argues that the trial court erred in denying his motion to suppress the incriminating evidence because the evidence was discovered as the result of an illegal search of the vehicle he was driving. We affirm.

Officer Olen Craig testified for the State at the suppression hearing. Officer Craig stated that he was patrolling the eastbound lanes of Interstate 40 in Crawford County in the early morning hours of May 12, 2004. He was driving behind a 2004 Ford Taurus with California tags when he observed the Taurus cross the center line twice. As a result, Officer Craig decided to make a traffic stop, which was initiated at 2:05 a.m.

Upon stopping the vehicle, Officer Craig found that Mr. Travis was the driver and a man named Meldanado Hankins was in the front passenger seat. Officer Craig stated that when he approached, Mr. Travis was holding a cell phone in his lap and would not look at him. When Officer Craig asked for license and registration, Mr. Travis gave him his driver's license and a rental agreement. Officer Craig returned to his patrol car and called for background checks, which revealed that Mr. Travis had a prior arrest involving possession of a firearm, and that Mr. Hankins had been arrested for an unspecified sexual offense.

The rental agreement listed the lessee as Makala Racobs, and did not pertain to the 2004 Taurus. When Officer Craig returned to the vehicle and informed Mr. Travis that he presented the wrong rental agreement, Mr. Travis produced another rental agreement. This contract did pertain to the 2004 Taurus, and listed Makala Racobs as the lessee with no other authorized drivers.

Officer Craig went back to his patrol unit at about 2:13 a.m. and called Officer Michael Bowman for backup assistance, explaining that he had a "quirky feeling." Officer Craig then proceeded back to the Taurus, where he instructed Mr. Travis to exit the vehicle and join him in the patrol car. During their conversation, Mr. Travis stated that he was traveling to Jacksonville, North Carolina, and that his sister-in-law had rented the car for him for insurance purposes because he was under twenty-five years of age. Officer Craig asked Mr. Travis if he had ever been arrested before, and Mr. Travis acknowledged a prior misde-

meanor arrest. Officer Craig asked if he could search the car, and after giving evasive answers Mr. Travis ultimately said "no."

Officer Bowman arrived with a drug-detection canine at about 2:18 a.m. Mr. Hankins was removed from the car, and when asked about their destination he stated that they were headed to Jacksonville, North Carolina. Officer Bowman walked the dog around the car, and the canine sniff was concluded at approximately 2:21 a.m. During the procedure, the dog alerted on the trunk of the car. As a result, the officers searched the trunk and found 2.2 pounds of cocaine and 3.9 pounds of marijuana.

Officer Craig testified that during the stop he suspected that Mr. Travis was hauling drugs due to his extreme nervousness and evasive answers as to whether he would consent to a search. Officer Craig further found it suspicious that there were two rental agreements, and that the valid agreement did not authorize Mr. Travis as a driver and indicated that the car was due back in California on the following day. Officer Craig stated that he did not issue a citation for crossing the center line because of his suspicion of more serious criminal activity. Officer Craig acknowledged that he did not have any information that the car had been stolen, and the fact that the occupants of the car had prior arrests did not factor in his decision to detain them.

In denying Mr. Travis's motion to suppress, the trial court stated:

> The stop was 15 minutes by my calculations. The court finds that there was no violation of 3.1 or 3.2 as far as the rules are concerned. The appellate courts have gone and have sanctioned 20 minutes as being totally unreasonable [sic]. I find it to be well within that time. The court finds that the stop was lawful because the vehicle was across the center line twice, I believe. The court also finds that the officer testified that the driver was nervous, that the rental agreement was of a third party, the third party was not present in the car, and the defendants were not authorized users of the car. The officer also testified that there were two rental agreements, that the driver would not look up and was evasive in answering the questions. The contract was due back on the 13th and this was early morning on the 12th and the car was going in the other direction. The officer later testified that it caused him problems that the driver was on the cell phone when he walked up. I believed this has been identified in other cases, as far as in drug situations, that other vehicles are driving in tandem and in commu-

nication by cell phones. . . . The State is on very solid ground here based on them not being authorized drivers under the contract to this vehicle. They had a right to confiscate the car and hold it until it was determined that someone had a right to drive the vehicle any further. . . . The nervousness, the refusal to look up, evasive answers, the contract being due the next day, two rentals in the car, and the renter not being present in the car. Your motion to suppress will be denied for those reasons.

For reversal, Mr. Travis argues that the contraband should have been suppressed because the search violated his Fourth Amendment right against unreasonable searches and seizures and Rule 3.1 of the Arkansas Rules of Criminal Procedure. Rule 3.1 provides:

A law enforcement officer lawfully present in any place may in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.

In *Laime v. State*, 347 Ark. 142, 60 S.W.3d 464 (2001), our supreme court recognized that as part of a valid traffic stop, a police officer may detain a traffic offender while he completes certain routine tasks, but that such detention is unrelated to a Rule 3.1 detention. Mr. Travis argues in this case that the routine tasks associated with the traffic violation were completed long before the canine alerted to the presence of drugs, and thus that the continued detention would only be justified if there was reasonable suspicion under Rule 3.1. He further contends that there was no such reasonable suspicion under the facts of this case.

While there was evidence that Mr. Travis exhibited nervousness during the stop, he cites *Lilley v. State*, 362 Ark. 436, 208 S.W.3d 785 (2005), where the supreme court held that nervous-

ness alone does not constitute reasonable suspicion of criminal activity and grounds for detention. Mr. Travis also cites *U.S. v. Beck*, 140 F.3d 1129 (8th Cir. 1998), where the Eighth Circuit Court of Appeals stated that there was nothing inherently suspicious about Mr. Beck's use of a rental vehicle, even though rented by a third person, to travel. The circumstances of this case showed that Mr. Travis was nervous and was traveling in a rental car that had been rented by a third person and was due back in California the next day. Mr. Travis submits that these factors did not give rise to reasonable suspicion of any drug-related activity. In *United States v. Boyce*, 351 F.2d 1102 (11th Cir. 2003), the appeals court stated that in deciding whether certain factors give rise to reasonable suspicion of criminal activity, the factors together must serve to eliminate a substantial portion of innocent travelers before the requirement of reasonable suspicion will be satisfied. Mr. Travis argues that the factors in this case were consistent with innocent travel, that Officer Craig's decision to detain him was merely based on a hunch, and that the trial court erred in denying his motion to suppress.

The State first contends that we should affirm without reaching the merits of Mr. Travis's argument because he failed in his burden of establishing that he had any standing to contest the search. We agree.

In *Ramage v. State*, 61 Ark. App. 174, 966 S.W.2d 267 (1998), this court set out the following guidelines for determining standing to contest a Fourth Amendment search:

> Fourth Amendment rights against unreasonable searches and seizures are personal in nature. *McCoy v. State*, 325 Ark. 155, 925 S.W.2d 391 (1996). Thus, a defendant must have standing before he can challenge a search on Fourth Amendment grounds. *Dixon v. State*, 327 Ark. 105, 937 S.W.2d 642 (1997). The pertinent inquiry regarding standing to challenge a search is whether the defendant manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognize that expectation as reasonable. *McCoy v. State, supra*; *Littlepage v. State*, 314 Ark. 361, 863 S.W.2d 276 (1993). It is well settled that the defendant, as the proponent of a motion to suppress, bears the burden of establishing that his Fourth Amendment rights have been violated. *McCoy v. State, supra*; *Rockett v. State*, 319 Ark. 335, 891 S.W.2d 366 (1995). A person's Fourth Amendment rights are not violated by the introduction of damaging evidence secured by the search of a third person's premises or property. *Davasher v. State*, 308 Ark. 154, 823

S.W.2d 863 (1992); *Rankin v. State*, 57 Ark. App. 125, 942 S.W.2d 867 (1997). A defendant has no standing to question the search of a vehicle unless he can show that he owns the vehicle or that he gained possession of it from the owner or someone else who had authority to grant possession. *McCoy v. State, supra; Littlepage v. State, supra; State v. Barter,* 310 Ark. 94, 833 S.W.2d 372 (1992).

*Id.* at 176-77, 966 S.W.2d at 268-69.

In holding that Mr. Travis lacked standing in the present case, we are guided by our supreme court's decision in *Littlepage v. State*, 314 Ark. 361, 863 S.W.2d 276 (1993). In that case the appellant was driving a rental car that had been rented to a third person who was the only authorized driver in the rental agreement. The vehicle was stopped and searched and the police seized illegal drugs and other contraband. Mr. Littlepage argued on appeal that the trial court erred in denying his motion to suppress, but the supreme court declined to reach the merits of his argument based on the following analysis:

> In this matter, Littlepage bore the burden of proving not only that the search of the car he drove was illegal, but also that he had a legitimate expectation of privacy in that car. The proof revealed that the car Littlepage was driving was rented to Rebecca Jones, who was not present at the time of the arrest. Ms. Jones was the only authorized driver in the rental agreement. Littlepage claimed that Ms. Jones had rented the car for him in Dallas for his use when his own car had broken down, but there was no showing that this assertion had any validity. Besides, the rental agreement authorizing Ms. Jones to drive the car had expired two days prior to Littlepage's traffic stop and arrest. Clearly, Littlepage failed to establish his expectation of privacy in the searched automobile. Accordingly, we conclude that Littlepage had no standing to challenge the officer's search as unconstitutional. Because Littlepage had no expectation of privacy in the car, the issue of whether or not this was a pretextual search is of no moment.

*Littlepage v. State*, 314 Ark. at 369, 863 S.W.2d at 280 (citations omitted).

The circumstances in the case at bar are not materially distinguishable from those in *Littlepage v. State, supra*. As in that case, Mr. Travis was driving a car rented to a third party who was not present, and he was not listed as an authorized driver. And

other than the officer's testimony as to Mr. Travis's explanation of how he came into possession of the car, Mr. Travis offered no proof on the issue at the suppression hearing. While the rental agreement in *Littlepage* had expired and the one in the present case was valid for one more day, we read *Littlepage* to say that the driver lacked standing whether or not the rental contract had expired. Because Mr. Travis failed to prove that he had an expectation of privacy in the vehicle he was driving, we conclude that he failed in his burden to establish standing to challenge the search. Therefore, we do not reach the merits of his argument on appeal.

Affirmed.

HART and GLOVER, JJ., agree.