JERRY EDWARD AUSTIN *v.* STATE OF ARKANSAS

CR 73-9                                     494 S.W. 2d 472

Opinion delivered May 21, 1973

*Skillman, Durrett & Davis,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Clarence Walden Cash,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Appellant, Jerry Edward Austin, was charged with the offense of murder in the first degree, it being alleged that he did "feloniously, wilfully, deliberately, with malice aforethought and with premeditation and deliberation shoot and kill Mack Crawford Howell, or did stand by, aid, abet, assist, advise or encourage another in the shooting and killing of the said Mack Crawford Howell". On trial, Austin was convicted and sentenced to life imprisonment in the Arkansas Department of Correction. From the judgment so entered, Austin brings this appeal. For reversal, two points are asserted, first that the court erred in not directing a verdict for the defendant, it being contended that the evidence was not sufficient to support a conviction, and second it is alleged that the court erred in not declaring Garth W. Stewart, a witness on behalf of the state, an accomplice as a matter of law. We proceed to a discussion of these points.

According to Mrs. Nell Howell, wife of Mack Crawford Howell, they were residents of West Memphis, having lived there fifteen or sixteen years. At about 3:30 A.M. on June 14, she was awakened from sleep by a knock at the door. Mrs. Howell was sleeping with her youngest son in his room because he had been ill the night before. As she walked to the hall toward the door, her husband, who had been sleeping in the bedroom, having also been awakened, was putting on his trousers. Mrs. Howell pulled back the curtain and saw the figure of a person outside, opened the door and said, "Yes?" and the person asked, "Is Mack home?" By the time she had answered in the affirmative, her husband had reached the living room and came on to the door. He turned on the living room light and she stepped back since she was in her gown, and heard someone say, "Mack", and as she went to get her robe, she heard words, "Step around the corner". After putting on her robe, she came back, but could see no sign of anyone; she then went to the drive, but still could see no one and as she reached the front door she heard three loud "claps". Subsequently, she called a neighbor from the bedroom telephone. They looked around the

house and she decided the police should be called, endeavored to use the telephone in the kitchen, but it was "dead". In searching around the house, it was found that one of the telephone wires had been cut. Mrs. Howell was subsequently advised that her husband's body had been found in a nearby field.

Police officers testified about the finding of the body and they related their investigation in the neighborhood. Howell's body contained three wounds to the left side of the face, and two other wounds to the left shoulder, and three bullets were removed and turned over, with other items, to the F. B. I. laboratory in Washington, D.C. The officers received a telephone call from Savanna, Tennessee, which proved helpful in furnishing a lead and further investigation indicated the involvement of appellant, Jerry Austin, and his wife, Linda, who lived next door to the Howells, Gene DuBois, cousin of appellant, and Garth W. Stewart. In trying Austin, the state never contended that appellant actually fired the shots that killed Howell, but only that he planned, aided, and abetted DuBois in perpetrating the crime. In other words, it was contended that Austin was an accessory before the fact, which, of course, under our statutes, means that, if guilty, he was guilty as a principal.

The main witness for the state was Garth W. Stewart, twenty-five years of age, and a resident of Cortland, Alabama. Stewart testified that he had known DuBois for two or three months; that he met Austin and wife on June 13 at Waterloo, Alabama at a time when the witness was with DuBois. He said that Austin wanted to return to his home at West Memphis and agreed to pay Stewart $35.00 if the latter would use his car and take the Austins to West Memphis. Stewart agreed, the parties first stopping at Savanna, Tennessee, the home of Linda Austin's parents. This occurred between 8:00 and 9:00 P.M. When they left Savanna, Mrs. Austin drove the car, her husband and DuBois sitting in the front with her. Stewart lay down in the back seat and went to sleep and did not awaken until they pulled into a truck stop at Memphis. At that time, according to the witness, appellant was driving the car. All four went into the truck stop, ate a sandwich, Stewart noticing that the time was about 2:30

A.M. They left from there and went to the Austin house in West Memphis. Stewart heard Austin point out to DuBois a stop sign, which it later developed was located at the intersection of Jackson and Woods in West Memphis and also heard Austin tell DuBois where Mack Howell lived. After going into the Austin house, Stewart testified that he went into the kitchen and drank a cup of coffee with Mrs. Austin while appellant and DuBois went on towards the back of the house through a hallway. When they returned, DuBois was putting on a black shirt over his other shirt. As DuBois started out the door, Stewart got up to go with him, reached the door, but Austin caught him by the collar of his shirt, jerked him back and he observed a pistol in Austin's hand, the latter stating, "You learned too much as it is. Furthermore, you learned the whole details." He said that DuBois came back to the door and Austin handed him either a knife or wire pliers, told DuBois to go up the side of his house, and stay in the dark. Subsequently, Austin directed the witness to get into his (Stewart's) automobile, Stewart getting under the wheel and Austin sitting on the passenger side. He was then directed to back the car out of the driveway, but not to turn on his lights; further, he was told to stop the car "a little piece past the second house". The witness said that appellant then told him to cut off the motor and give to Austin the car keys, and appellant "then got out and went out around behind the car". Stewart stated that the porch light came on at the house and he observed DuBois standing on the front porch and that Austin was standing between the car and the house. Austin was wearing a light colored shirt. Stewart observed a woman come to the door, close it, and then a man came to the door, put out his hand as if to shake hands, and the witness stated:

> "Then DuBois motioned like this, with his hand, then DuBois and this man jumped off the porch and started running towards that bush or tree where Jerry Austin was standing at, then when they got even with him, Jerry got on one side and Gene on the other side coming on. . .* * * Then come on to my car, Jerry or Gene one opened the back car door, I don't know which one it was opened the back car door. And told this man to get in. He got in, Gene DuBois

got in, then he throwed me the key, then Jerry said, 'Be sure to put the gun where I told you to put it at.' "

The man got into the back seat, DuBois getting in after him and then handing the keys to Stewart. DuBois then told Stewart to "crank up and go on". Austin stood at the car until it left. The witness said that the man stated that he had never seen either of the two (Stewart and DuBois) and asked what they wanted. Subsequently, he begged DuBois not to kill him. As Stewart started to make a turn, the man (Howell) jumped from the back seat and began to run out across a field. DuBois fired a shot and jumped out of the car following Howell. Several shots were fired and DuBois ran back to the car, telling Stewart, "All right, let's go." He said that DuBois threw the pistol out of the car by the stop sign where Austin had told him to throw it. According to the witness, "He pulled a little old double barrell gun, one barrel on top of another one, on me", took over the driving, and drove on back to Alabama. Stewart testified that he remained quiet and made no report of the matter because DuBois threatened to kill him and his family. He insisted that he knew nothing in advance about any plans to kill Howell. Though Stewart subsequently fled with DuBois to Mexico, and then back to Miami, Florida, he insisted that these actions were occasioned by fear for his life. Stewart did eventually surrender himself to the police and voluntarily return to Arkansas.

Other facts tend to connect Austin with the murder. We list these pertinent facts as follows:

1. Howell was killed by a .22 caliber revolver and Jim Bell of the West Memphis Police Department testified that he found a .22 caliber cartridge casing and Remington-Peters brand .22 cartridges at the home of Joshua Austin, father of appellant. Bell also found a pair of wire pliers and a steak knife at appellant's home next door to the home of the victim.

2. Officer Keen of the West Memphis Police testified that he found a Harrington & Richardson 9 shot .22 revolver at the intersection of Jackson and Woods Streets in West Memphis, not too far from the place where the

body was found, being the location where Stewart said Austin had told DuBois to throw the pistol.

3. James Daniel Beck, a firearms expert from the Federal Bureau of Investigation, testified that two of the bullets taken from the victim were fired from a .22 caliber revolver of the type found by Detective Keen.[1] He testified that the bullets were brass coated and manufactured by Remington-Peters, and were the same type as the cartridges found at the home of appellant's father in Waterloo, Alabama. The witness also testified that a cartridge hull found at the father's home was definitely fired by the Harrington & Richardson 9 shot revolver found at the intersection of Jackson and Woods in West Memphis.[2]

4. Wanda Shaw, appellant's sister-in-law, testified that she saw appellant shoot a pistol while at the Joshua Austin home in Waterloo on June 12, 1971.

5. Frederick Edwards of the Federal Bureau of Investigation, an expert, testified that fragments of the telephone wires cut at the Howell home matched fragments taken from a steak knife found at the Jerry Austin home. "What I'm telling you is, as I said before, is that the elements that are present in State's Exhibit 18 [telephone wires] matched the elements in the copper particles and black inclusions on Plaintiff's Exhibit 20 [steak knife]. And, it either came from that particular source, 18, or some other source that had the same trace elements."

---

[1]Beck testified that the barrel of the .22 caliber Harrington & Richardson revolver was rifled with six lands and grooves twisting to the right. As to these bullets, the witness stated:

"Two of these bullets have been fired from a barrel that has six lands and grooves twisting to the right. However, these bullets do not bear a sufficient amount of microscopic amounts to positively identify the weapon from which it was fired. All that can be said about two of these bullets is that they were fired from a weapon that had six lands and grooves twisting to the right."

[2]"Q. Mr. Beck, Plaintiff Exhibit 28, this hull, has been identified previously as coming from Waterloo, Alabama. Is it my understanding that your testimony is that Plaintiff Exhibit 19 [Harrington & Richardson revolver], fired that cartridge hull, to the exclusion of every other weapon in the world?

A. That is correct. Yes, sir."

6. James Shaw, father-in-law of Austin, testified that appellant came to his home on June 11, 1971, and told him that Howell was trying to date appellant's wife, and "he just said something about he couldn't get away with it, but he was drinking like everything, he got in a good way though before he left."

7. Mrs. Gladys Shaw, mother-in-law of Austin, testified that a few nights after June 14, 1971, appellant called her at the home in Savanna, Tennessee, and told her that if any of the police or anyone came around asking questions, to tell her husband to say that he had carried appellant and his wife, Linda, to their home on June 14. Mrs. Shaw replied that her husband would not do that "because he wouldn't tell a story about it."

Let it be remembered that Stewart testified that he heard Austin point out the house where Howell lived; that he observed Austin giving DuBois a knife or pliers; that he heard Austin tell DuBois to go up the side of the house and stay in the dark; that he saw Austin assist DuBois in bringing Howell to the car; that he saw Austin point out the location where the pistol should be thrown and where it was actually found. The defense offered no testimony. We hold that the evidence was ample to go to the jury.

Appellant insists that Stewart was an accomplice as a matter of law. We do not agree. Stewart, as heretofore related, testified that he knew nothing about the plan to kill Howell until that event happened, and that his participation was occasioned by fear, being directed by Austin, who held a pistol in his hand, to get into the automobile. After the shooting, he testified that DuBois pulled a gun on him and subsequently threatened his life and that of his family if he revealed the events that had occurred. Of course, there were some facts which tended to discredit this contention; on the other hand, Stewart did not even know the Austins until the night of the murder, and there was no reason for him to be angered or to become exercised because of actions of Howell toward Linda Austin. At any rate, the evidence raised a fact question and it was entirely within the province of the jury to make the determination. The court properly in-

structed the jury on this phase of the case.[3] See *Froman and Sanders* v. *State,* 232 Ark. 697, 339 S.W. 2d 601, with particular reference to the citations from *Wharton's Criminal Evidence* and *Underhill's Criminal Evidence.* In *Ford* v. *State,* 205 Ark. 706, 170 S.W. 2d 671. we said, citing numerous other Arkansas cases, that "The rule in this state is that the corroborating evidence need only tend to connect the defendant with the commission of the offense, and not that such evidence of itself be sufficient, and where there is substantial corroborating evidence tending to connect the defendant with the offense, its sufficiency is a question for the jury, together with that of the accomplice."

In accordance with what has been said, it was for the jury to determine whether Stewart was an accomplice. If they found that he was not an accomplice, of course there was no necessity for any corroboration. On the other hand, if they found him to be an accomplice, we are of the view that the items mentioned under Point One tend to connect appellant with the killing, independent of the

---

[3]From the record:

"No one may be convicted of a felony upon the uncorroborated testimony of an accomplice.

An accomplice is one who stands by and aids, abets or assists in the perpetration of a crime or who after a crime has been committed, by some affirmative act, harbors and·protects the person who perpetrated the crime. One, who knowing of a crime, harbors and protects the felon from anxiety for his own safety and not to shield the felon is not an accomplice and the mere fact that one remains silent with knowledge that a crime has been committed without intending to shield the criminal does not, of itself alone, make him an accomplice.

If you find that G. W. Stewart was an accomplice you cannot convict the defendant upon his testimony unless you find his testimony is corroborated by other evidence in the case tending to connect the defendant with the commission of the crime; and the corroboration is not sufficient if it merely shows that the crime was committed, and the circumstances thereof. But you are instructed that the amount of such corroborating evidence and its weight is a matter solely for the jury, and if you find that such witness has been corroborated by the evidence, positive or circumstantial, other than his own, tending to show that the crime was committed and connecting the defendant with its commission, you will be justified in convicting the defendant, provided you believe him guilty from all the evidence in the case and beyond a reasonable doubt."

testimony of Stewart, and such evidence was sufficient corroboration of Stewart's testimony to support the conviction.

Affirmed.

FOGLEMAN, J., not participating.