Floyd JOHNSON and Bill KEELING
*v.* STATE of Arkansas

CR 76-6                                      536 S.W. 2d 704

Opinion delivered May 24, 1976

*McMillan, Turner & McCorkle,* by: *Toney D. McMillan,* for appellant Johnson; *Travis Mathis,* for appellant Keeling.

*Jim Guy Tucker,* Atty. Gen., by: *B. J. McCoy,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellants Floyd Johnson and Bill Keeling were convicted of killing hogs belonging to Alvin Dwiggins with intent to steal them in violation of Ark. Stat. Ann. § 41-3917 (Repl. 1964). At about 7:15 a.m. on the morning of January 14, 1975, Alvin Dwiggins arrived at his hog barn on his farm some four miles east of Amity, Arkansas. He found a station wagon with a dead sow behind it and found another dead sow in the hallway of the barn. Both had been shot. Defendant Bill Keeling was lying down in the front seat of the station wagon, and another man with a toboggan over his face was hiding behind the vehicle. The second man fired a pistol, and Dwiggins left the scene and called the Clark County Sheriff's office.

The Sheriff's officers arrived at the scene at about 7:55

a.m. on January 14, 1975. At that time Keeling was arrested and taken to jail. A Bench Warrant was issued for Floyd Johnson on March 28, 1975, and Floyd Johnson was arrested on March 31, 1975. Both defendants were tried together on July 28, 1975, and the jury found them guilty as charged and fixed their punishment at two years each.

No useful purpose would be served by an elaborate statement of the evidence. We find it sufficient to sustain the jury verdict as to both defendants, unless we find error in other respects. Otherwise, insofar as Johnson is concerned, the question is one of sufficiency of identification. While the testimony of the prosecuting witness was not as convincing as might be desired, it was sufficient if it was given full credit by the jury. See *Yelvington v. State,* 169 Ark. 359, 275 S.W. 701.

Appellant Johnson raised two points, other than those questioning the sufficiency of the evidence. The first is his contention that the court erred in admitting into evidence a drawing by Arkansas State Police Sergeant Ursery made from a description given him by Dwiggins. Dwiggins had testified and positively identified Keeling as the person he had seen lying in the station wagon. He had related that the other man, wearing a toboggan and a heavy jacket, had been hiding behind the station wagon. Dwiggins said this man fired a pistol, while shielding his face with his left arm. Dwiggins did not see this man in a fully erect position or get a full facial view of him but did describe him as being of average height, over 30 years of age, with a distraught look. He said that he knew at the time that this man was someone he had seen before and that his eyes corresponded with Johnson's and his lower jaw with Johnson's lower jaw and facial parts. He had seen Johnson in an automobile with a police officer, Louis Dorsey, about 3:00 p.m. on the day he found these men at his barn. Dwiggins testified on redirect examination, without objection, that he had told Sgt. Ursery of the man's facial makeup and that Ursery had made a "composite" drawing during the following week. Johnson's first objection was made when Dwiggins was presented with the actual drawing by the prosecuting attorney.

On cross-examination Dwiggins had said that he and

Johnson had gone to school together from the first grade through high school. He admitted that he had told the officers who came to his barn that he could not positively identify this man, that he had not been sure of his identity, and that he did not identify Johnson when he saw him at 3:00 p.m. He denied telling the officers or Joe Lair that this man was larger than Keeling, Officer Dorsey or himself. The "composite" drawing was identified by Dwiggins over appellant's objection that the state's counsel had stated that they did not intend to introduce it. It was not then introduced in evidence. A deputy sheriff contradicted Dwiggins by saying that Dwiggins had described the second man as being larger than Keeling.

Later Sgt. Ursery testified that he had prepared the drawing from Dwiggins' description. The drawing was admitted in evidence over Johnson's objection. The objection by Johnson's attorney, both at the time of the identification of the drawing by Dwiggins and its introduction in evidence was a plea of surprise. The following exchange took place when the drawing was offered through Ursery:

Your Honor, I was told by the State this morning that they were not going to introduce that and I would like to plead surprise on it. I have not had an opportunity to investigate this alleged composite, how it was done and under what circumstances or anything.

The State replied:

It was not the intention of the State to introduce this until and unless it was brought out in cross-examination by the defense. This was the only time that it was brought out and the State proceeded with the matter.

After the circuit judge overruled the objection, the drawing was introduced. No motion for continuance was ever made.

There was no reversible error in this respect. It was always held that surprise by evidence introduced was not, standing alone, a ground for new trial, and that the proper remedy when evidence is admitted to the surprise of a party

in a criminal case is by application for a postponement or continuance so the party surprised can meet the testimony *Nickens* v. *State,* 55 Ark. 567, 18 S.W. 1045; *Overton* v. *State,* 57 Ark. 60, 20 S.W. 590. See also, *Mode* v. *State,* 169 Ark. 356, 275 S.W. 700; *Adams* v. *State,* 100 Ark. 203, 139 S.W. 1116. See also, *Sellers* v. *Harvey,* 220 Ark. 541, 249 S.W. 2d 120. Even though a motion for new trial is no longer essential to the raising of a point on appeal, the rule still applies insofar as it relates to the remedy for surprise. A judgment will not ordinarily be reversed on appeal because of surprise by evidence ruled admissible on trial, in the absence of a request for continuance and a showing of inability to meet the situation. *Macumber* v. *Gillett,* 138 Neb. 714, 294 N.W. 854 (1940). We have applied this rule as to reversal even when a motion for new trial was required. *Fleming* v. *State,* 72 Ark. 140, 78 S.W. 766. There is all the more reason to apply it when a motion for new trial is not required. Usually the granting of a continuance in these matters lies within the sound judicial discretion of the trial judge. *Bascom* v. *State,* 114 Tex. Cr. 32, 24 S.W. 2d 437 (1929). Since there was no motion for continuance, the trial judge was not called upon to exercise his discretion in acting upon it. If subsequent developments in the trial had shown material prejudice to appellant, he might have raised the question by a motion for new trial. But in the absence of either motion the trial judge has never been afforded any opportunity to exercise discretion in the matter.

Johnson also complains that the trial court erred in refusing to give his requested instruction relating to the necessity for corroboration of an accomplice by which the jury would have been told that a witness, Damon Daniels, was an accomplice as a matter of law. Instead, the court gave an instruction stating that corroboration of an accomplice is required, but left the status of Daniels as an accomplice for the jury's determination as a question of fact. Appellant's argument is based, for the most part, on the fact that Daniels testified on a grant of immunity for prosecution.

Daniels testified that during the night of January 13, he went with Keeling to Johnson's house in search of Keeling's billfold, that Johnson got in Keeling's station wagon with them and they proceeded to the Dwiggins farm, where they

got out of the car and saw a hog lying in the hallway of the barn. He said that Johnson was wearing a toboggan. Daniel said that when he asked that he be taken back to town, Johnson told him not to leave, that he would probably be hurt if anything came of the incident and, at one point, threatened to kill him. He stated that, after staying around a few minutes, he left, went to the highway, caught a ride into Amity, and later discussed the situation with an attorney, who was present when he made a statement to the authorities. Daniels testified that he never intended to participate in the crime and that he was afraid of Johnson.

We do not agree that a grant of immunity, in and of itself, makes the beneficiary an accomplice of another person charged with the crime as a matter of law. An accomplice is one who could himself be convicted of the crime charged against the defendant. *DuBois* v. *State,* 254 Ark. 543, 494 S.W. 2d 700. We have pointed out that the burden is on the defendant to show that a witness is an accomplice. *Froman* v. *State,* 232 Ark. 697, 339 S.W. 2d 601. Daniels' testimony casts considerable doubt upon his status as an accomplice. We cannot be ignorant of the fact that a person on whom serious suspicion of guilt of a crime may fall is privileged to claim a constitutional right against self-incrimination and that immunity is often granted to such a person, even though there is serious doubt that he could actually be convicted of the crime.

Even strongly suspicious circumstances attached to one present at the scene of the commission of a crime are not sufficient to make him an accomplice as a matter of law. *People* v. *Howell,* 69 Cal. App. 239, 230 P. 991 (1924). At best, a grant of immunity from prosecution is only evidence tending to show that the beneficiary of the grant is an accomplice, which is to be considered with other facts and circumstances in determining whether he is an accomplice as a matter of law. The circumstances here were not sufficient to eliminate a question of fact as to Daniels' status. See, *Austin* v. *State,* 254 Ark. 496, 494 S.W. 2d 472; *Odom* v. *State,* 259 Ark. 429, 533 S.W. 2d 514. In *Odom,* we stated that ordinarily the question whether a witness is an accomplice is a mixed question of law and fact to be submitted to the jury and that the court should not instruct the jury that a certain witness is an accomplice if

there is any dispute upon that point.

Keeling's points for reversal turn upon his contention that he was not guilty, because of drunkenness, which he contends made it impossible for him to form the specific intent to steal. There was considerable evidence from which a jury might have so found. But we cannot say that reasonable minds could draw no other inference. Damon Daniels testified that he went with Keeling to look for Keeling's billfold, that Keeling drove his own station wagon, even though he was staggering drunk when the officers arrived at Dwiggins' barn. Dwiggins testified that when Keeling got out of the station wagon after the officers arrived he walked pretty straight for a drunk man.

Voluntary intoxication is not a defense to a crime. Ark. Stat. Ann. § 41-115 (Repl. 1964). The question whether Keeling was so intoxicated at the time of the commission of the crime (which the jury might have believed to have occurred before Daniels rode to the Dwiggins barn with Keeling) as to be incapable of the essential criminal intent was submitted to the jury under proper instructions. There was testimony that there were an opened pint bottle about one-fourth full of whiskey and another unopened in Keeling's station wagon. The evidence does not disclose when or how much he drank from the open bottle. The degree of his intoxication when the hogs were killed or when the offense was planned was left largely to inferences to be drawn from the testimony. We have said that the determination whether an accused is so intoxicated as to be incapable of forming the required specific intent to commit a crime is solely within the province of the jury. *Stevens* v. *State,* 246 Ark. 1200, 441 S.W. 2d 451. Even if we thought that a preponderance of the evidence sustained this defense, we would not be at liberty to set aside this conviction. This was primarily a matter for the jury. It might have been a question for the trial judge on motion for new trial addressed to him on this ground, but there was no such motion.

The judgment is affirmed.