Jimmy SCHERRER *v.* STATE of Arkansas

CR 87-80 742 S.W.2d 884

Supreme Court of Arkansas
Opinion delivered January 19, 1988

*James Clouette*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. The appellant, Jimmy Scherrer, was convicted in the trial court of capital murder and was sentenced to life imprisonment without parole. We affirm the judgment of conviction. This case was tried separately, and appealed separately, from the case of *Johnny Scherrer* v. *State*, 294 Ark. 227, 742 S.W.2d 877 (1988), also decided today.

Debbie Watts, the murder victim, was a teacher who had the additional duty of recruiting students for the Dumas Adult Education Center. At about one o'clock on the afternoon of September 18, 1985, she left the Center on a recruiting trip and never returned. Three days later her body was found in a bayou a few miles from Dumas. Her hands and feet were bound, her throat had been cut, and she had been raped. Terry Harrison and Johnny Scherrer were subsequently arrested and charged with her murder. Harrison gave statements to the police which implicated the appellant and also a fourth young man, Billy Ivey. Harrison subsequently pleaded guilty to the murder of Miss Watts and, as a result, was declared an accomplice as a matter of law in the case at bar. Appellant argues that the trial court erred in refusing to also declare Billy Ivey an accomplice as a matter of law. If Ivey were an accomplice as a matter of law in this case, there would be no independent corroboration tending to connect appellant with the murder, *see* Ark. Code Ann. § 16-89-111 (e)(1), *replacing* Ark. Stat. Ann. § 43-2116 (Repl. 1977), and we would be required to reverse and dismiss. However, the trial court correctly refused to declare Ivey an accomplice as a matter of law and properly submitted the issue to the jury for its finding.

Appellant contends that the trial court erred in refusing to declare Ivey an accomplice for five reasons: First, he argues that there was testimony Ivey aided in the victim's abduction by helping Harrison hold her car window down. While Harrison indicated at trial that appellant helped him hold the window down, Ivey denied doing so. Further, the crime laboratory could not identify the fingerprints on the victim's car window as being Ivey's. Thus, there was a factual dispute for the jury to decide. Second, appellant argues that there was testimony Ivey participated in the rape. Appellant is mistaken. There was no such testimony at trial. Although Harrison had made a prior out-of-court statement to that effect, at trial Harrison stated that Ivey had not raped Miss Watts. Again, there was a factual dispute for

the jury to decide. Third, appellant asserts that Ivey would not discuss the case until he was granted immunity from prosecution. While the record does not clearly reveal whether Ivey was in fact granted immunity, our law is clear that even if it was granted, the grant of immunity alone does not cause a witness to be an accomplice as a matter of law. *Johnson* v. *State*, 259 Ark. 773, 536 S.W.2d 704 (1976). Fourth, appellant points out that Ivey was undisputedly present at the scene of the crime. However, mere presence at the scene of a crime does not make one an accomplice. *Spears* v. *State*, 280 Ark. 577, 660 S.W.2d 913 (1983). Fifth, appellant argues that even though Ivey was on the scene at the time the crime was committed, he did not report it to the police. We have held that the failure to inform law enforcement officers of a crime does not make one an accomplice as a matter of law. *Spears* v. *State, supra.*

 Since there was a factual dispute concerning Ivey's involvement, the trial court correctly refused to declare him an accomplice as a matter of law and properly submitted the matter to the jury. The jury's finding that he was not an accomplice is binding. *Cate* v. *State*, 270 Ark. 972, 606 S.W.2d 764 (1980).

For his second assignment of error appellant argues that the trial court erred in admitting into evidence an in-custodial statement which he made to Donald Moore, a Dumas policeman. At trial Moore testified that another officer, who had been making a cell check, told him that appellant wanted to talk to him. Moore testified that he walked back to the cell, and the appellant asked him for a soft drink. Moore left the cell, got appellant a soft drink, returned, and handed appellant the drink. At that time, appellant asked what he was being charged with. Moore replied he was being charged with murder. Then appellant asked, "what does Terry say about it." "Terry" is Terry Harrison, who later pleaded guilty to the murder. Moore stated that he told the appellant that Harrison had said that Johnny Scherrer, appellant's cousin who was tried separately for the murder, cut her throat. Moore testified that after he told appellant that Harrison had implicated appellant's cousin, the appellant responded, "no, Johnny didn't do it, Terry did." The appellant had been read his *Miranda* rights the day before. The trial court correctly admitted the statement.

A defendant's spontaneous statement, although made in police custody, is admissible against him. *Douglas* v. *State*, 286

Ark. 296, 692 S.W.2d 217 (1985). As we explained in *Beed* v. *State*, 271 Ark. 526, 609 S.W.2d 898 (1980):

> It was police misconduct that was intended to be inhibited by *Miranda*, . . . and its progeny and not the making of incriminating statements. Statements which do not result from in-custody interrogation are not barred . . . Spontaneous, voluntary and unsolicited statements made when an accused, although in custody, is not being interrogated are admissible . . . [Citations omitted].

 In determining whether a defendant's in-custodial statement was spontaneous, this Court has focused on whether the defendant's statement was made in the context of an interrogation made by police. A police interrogation is simply direct or indirect questioning put to the incustodial defendant by the police with the *purpose* of eliciting a statement from the defendant. *Berna* v. *State*, 282 Ark. 563, 567-68, 670 S.W.2d 434, 437 (1984), *cert. denied*, 470 U.S. 1085 (1985); *McGee* v. *State*, 280 Ark. 347, 352, 658 S.W.2d 376, 378 (1983); and *Turney* v. *State*, 239 Ark. 851, 395 S.W.2d 1 (1965). There is no indication in the instant case that Moore intended to elicit a statement from appellant when he spoke with him. The officer was asked by the appellant to come to his cell. Appellant brought up the subject of the charges and asked what Harrison had said. The officer simply did not question the prisoner. The trial court properly allowed the statement into evidence. *Smith* v. *State*, 282 Ark. 535, 669 S.W.2d 201 (1984).

 For his third assignment of error the appellant contends that the trial court erred in denying his pre-trial motion to disqualify the duly elected prosecuting attorney from prosecuting this case. The appellant bases his argument upon our recent case of *Duncan* v. *State*, 291 Ark. 521, 726 S.W.2d 653 (1987), but that case is vastly different. In *Duncan*, the prosecutor engaged in extensive interrogation of the defendant, testified on behalf of the State at a suppression hearing, and in closing argument described his interrogation of the defendant and expressed his opinion about the matter. We wrote: "In so doing, the prosecutor effectively became a witness for the state and underwrote his own credibility. A prosecutor should never cast himself in the role of a prosecutor and a witness, and it was reversible error to do so." Here, the

prosecutor did not attempt to underwrite his own credibility. Instead, he granted immunity to a witness, a proper role for a prosecutor preparing for trial, and took the statement of the witness. At no time did he personally attempt to vouch for the credibility of the state's witnesses.

Pursuant to Ark. Sup. Ct. R. 11(f) we have made our own examination of all other objections made at trial and find no reversible error.

Affirmed.