Bobby DIXON *v.* STATE of Arkansas

CR 96-1141                                    937 S.W.2d 642

Supreme Court of Arkansas
Opinion delivered January 27, 1997

[Petition for rehearing denied March 10, 1997.]

*Bill Murphy*, for appellant.

*Winston Bryant*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Asst. Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. The appellant, Bobby Dixon, was convicted of possession of methamphetamine with intent to deliver, simultaneous possession of drugs and firearms, possession of drug paraphernalia, and possession of marijuana with intent to deliver. He received imprisonment sentences of forty years, ten years, three years, and a $1,000 fine, respectively.

On appeal, Dixon challenges the sufficiency of the evidence, the trial court's ruling on his motion to suppress, and the jury instruction given on the simultaneous possession of drugs and fire-arms charge. We affirm.

On March 2, 1995, Trooper Ron Casey of the Arkansas State Highway Patrol noticed a pickup truck driving without a license plate near Sheridan, Arkansas. Casey pulled the truck over, and the driver of the truck, John Wright, exited the truck and explained to Casey that he had recently purchased the truck.

Wright gave Casey the purchase order for the truck, and Casey walked to the front of the vehicle to examine its vehicle identification number. While at the front of the truck, Casey

noticed the man sitting in the passenger seat, Bobby Dixon. While Casey did not know Wright, he did know Dixon from previous traffic stops and had even arrested him on a prior warrant.

Casey approached Dixon and asked him for his driver's license. He wanted to get his identification in order to ascertain whether Dixon had any outstanding warrants. Casey opened the truck's passenger door and asked Dixon if had been drinking. Dixon said yes and showed Casey a can of beer that he had been drinking.

Casey had Dixon step out of the truck, and he saw the can of beer sitting on the floorboard next to a glass of whiskey. While bent down looking at the floorboard, he also noticed a .380 automatic pistol lying under the front seat. Casey took the pistol and asked Dixon and Wright whose gun it was. Dixon responded that the pistol was his. Casey asked the two men if any other guns were in the truck, and Wright explained that he had two pistols located in the driver's side-door compartment. Casey found these additional guns and his examination revealed that all three guns were loaded.

At this time Casey went back to his patrol car to run a check on the guns and to radio for backup. Deputy Brett Turner of the Grant County Sheriff's office arrived at the scene, and Casey went back to the truck to search for more weapons and/or alcohol. He opened the driver's side door and looked in the backseat. He found a flask in the pouch located in the back of the driver's seat. He opened the flask and smelled what he thought was whiskey. He also discovered a liter bottle of whiskey on the backseat floorboard behind the driver's seat.

Casey then saw a green canvas bag on the backseat that resembled a shaving kit. The bag was zippered shut and located off-center on the backseat, toward the passenger side. Casey retrieved the bag and opened it. He smelled what he thought was methamphetamine. Inside the bag he discovered three plastic bags that contained a substance which appearance he associated with methamphetamine.

At this time he set the bag back down where it was lying and he placed Wright and Dixon under arrest. A subsequent search of the bag additionally revealed a small amount of marijuana, a foil bag containing some methamphetamine, and a set of computerized scales. The total amount of methamphetamine found was approximately 1300 grams. When Dixon was booked at the police station, a "small orange paper bundle" was found folded in Dixon's hand that contained a small amount of a green leafy substance.

### 1. Sufficiency of the evidence.

On appeal, Dixon challenges whether the evidence was sufficient to support his convictions. Double jeopardy considerations require this court to consider a challenge to the sufficiency of the evidence prior to other assignments of trial error. *Yocum v. State*, 325 Ark. 180, 925 S.W.2d 385 (1996). However, Dixon has failed to preserve this issue for appellate review.

Arkansas Rule of Criminal Procedure 33.1 provides in part as follows:

> A motion for directed verdict based on insufficiency of the evidence *must specify the respect in which the evidence is deficient*; a motion merely stating that the evidence is insufficient for conviction does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense.

(Emphasis added.) Moreover, this court has often explained and emphasized the bright-line rule drawn in *Walker v. State*, 308 Ark. 109, 883 S.W.2d 831 (1994), that a directed verdict motion in a criminal case must state the specific ground of the motion. *See, e.g., Lovelady v. State*, 326 Ark. 196, 931 S.W.2d 430 (1996); *McCoy v. State*, 326 Ark. 104, 929 S.W.2d 712 (1996); *Haltiwanger v. State*, 322 Ark. 764, 912 S.W.2d 418 (1995); *Stewart v. State*, 320 Ark. 75, 894 S.W.2d 930 (1995).

In the present case, Dixon essentially argues that the State failed to adequately prove the element of possession. However, a review of Dixon's motion for directed verdict reveals that it did

not apprise the trial court of this ground. Dixon's directed verdict motion following the close of the State's case was as follows:

> DEFENSE COUNSEL: Your honor, the State has rested and the Defense would move for a directed verdict on all counts on the grounds of insufficient evidence.

The trial court then denied this motion as to all counts. Dixon later renewed his motion at the close of his case:

> DEFENSE COUNSEL: Your honor, the defense renews its motions for a directed verdict on all counts on the grounds of insufficient evidence.

Again, this motion was denied.

These motions are clearly insufficient to preserve Dixon's argument that the statutory elements of his crimes were not proved. Therefore, this court is barred from addressing the merits of the sufficiency question.

### 2. Motion to suppress — standing.

At trial, Dixon moved to suppress the evidence seized from the truck, claiming it was the result of an illegal search and seizure. On appeal, the State argues that Dixon lacks standing to challenge the search of the truck. We agree.

An appellant must have standing to challenge a search on Fourth Amendment grounds because the rights secured by the Fourth Amendment are personal in nature. *Rakas v. Illinois*, 439 U.S. 128 (1978); *Littlepage v. State*, 314 Ark. 361, 863 S.W.2d 276 (1993). Whether an appellant has standing depends on whether he manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognize that expectation as reasonable. *Littlepage v. State, supra* (citing *United States v. Erwin*, 875 F.2d 268 (10th Cir. 1989)). In the present case, Dixon bore the burden of proving that he had a legitimate expectation of privacy in the truck. *Littlepage v. State, supra* (citing *Fernandez v. State*, 303 Ark. 230, 795 S.W.2d 52 (1990)).

In *Littlepage v. State, supra*, the appellant attempted to challenge the search of a vehicle that he was driving. This court held

that he had no such standing, because the evidence revealed that the car he was driving had been rented to a third person. This third person was the only person authorized to drive the car in the rental agreement. While the appellant asserted that the car had been rented for his own use because his had broken down, there was no showing that this assertion had any validity. Because the appellant failed to prove his expectation of privacy in the vehicle, the *Littlepage* court did not reach the merits of his Fourth Amendment claims.

Likewise, in *Koonce v. State*, 269 Ark. 96, 598 S.W.2d 741 (1980), this court found that the appellant had no standing to challenge the legality of the search of a vehicle. In *Koonce* a police officer approached a vehicle in which the appellant was sleeping. The officer observed an open beer and the smell of marijuana emanating from the vehicle, and he placed the appellant under arrest for possession of open beer. A subsequent search of the vehicle revealed a loaded revolver under the front seat on the passenger side. At the suppression hearing, the appellant testified that he did not own the car or the gun, and the trial court denied the appellant's motion to suppress the revolver. This court affirmed on appeal, finding that the appellant lacked standing to challenge the search. The court explained that "[s]ince Koonce had neither a property interest nor a possessory one, either in the vehicle or in the weapon seized, he had no legitimate expectation of privacy under the front seat of the vehicle, which would entitle him to invoke the exclusionary rule." *Id.* (citing *Rakas v. Illinois, supra*).

This is not to say that a passenger can never have an expectation of privacy in the search of a vehicle. For example, in *State v. Villines*, 304 Ark. 128, 801 S.W.2d 29 (1990), the defendants were passengers in a vehicle involved in a wreck in Arkansas during a planned trip from Dallas to Milwaukee. The investigating officer smelled marijuana in the car and observed suspicious behavior on the part of the defendants. He then pried open the trunk of the car and found a cardboard box containing marijuana among some other personal items. The trial court held that the defendants had standing to contest the search of the car, and granted their motion to suppress. This court rejected the State's appeal, noting that the defendants were more than "passengers *qua* passengers." *Id.* They

had placed their personal belongings in the trunk of the car and established a joint agreement with the owner of the car to share driving responsibilities over the course of the trip. This amounted to joint possession of the car over the course of the interstate trip. Thus, both defendants "had a sufficient possessory interest to exclude anyone who tried to interfere with the car or their luggage." *Id.*

Likewise, a passenger in a vehicle may not have standing to object to the search of the vehicle, but may be able to contest the search of their own personal belongings inside the vehicle. *See, e.g., United States v. Infante-Ruiz*, 13 F.3d 498 (1st Cir. 1994) (passenger had standing to challenge search of his own briefcase stored in the locked trunk of car); *People v. Armendarez*, 468 N.W.2d 893 (Mich. Ct. App. 1991) (passenger who had no standing to challenge search of automobile did have standing to challenge search of his own personal effects in automobile). Similarly, the occupants of a vehicle have standing to assert their own Fourth Amendment rights, independent of the owner's, such as in a challenge to the initial stop, or the seizure of their person. John Wesly Hall, Jr., *Search and Seizure* § 6:10 (2d ed. 1991).

In the present case, Dixon has failed to assert a possessory interest in the truck or the canvas bag. In fact, the purchase order for the truck revealed that Wright was the owner. Furthermore, Dixon has made no showing of any legitimate expectation of privacy in the interior of the truck or the canvas bag. Neither does Dixon challenge the validity of the initial stop.

The evidence does suggest that Dixon owned the gun that was found underneath the passenger seat. Thus, Dixon would have personal Fourth Amendment Rights as to the gun itself. However, these rights do not grant him standing to challenge the intrusion into the truck itself, or the search of the canvas bag.

Therefore, we must conclude that Dixon has no standing to challenge the search of Wright's truck and that this court is barred from addressing the merits of Dixon's Fourth Amendment claims. Accordingly, we affirm the trial court's denial of Dixon's motion to suppress.

### 3. AMCI 6414 Jury Instructions.

Dixon asserts that the trial court erred in instructing the jury with regard the simultaneous possession of drugs and firearms charge. Dixon has failed to preserve this issue for appellate review.

The instruction at issue provided as follows:

Bobby Dixon is charged with the offense of Simultaneous Possession of Drugs and Firearms. To sustain this charge, the State must prove beyond a reasonable doubt that:

First: Bobby Dixon possessed a controlled substance (methamphetamine);

Second: He committed this offense while in the possession of a firearm.

As used in this instruction there are two kinds of possession, actual and constructive. Actual possession of a thing is direct physical control over it. Constructive possession exists when a person, although not in actual possession of a thing, has the right to control it and intends to do so, either directly or through another person.

Dixon objected to this instruction because it omitted an element of the offense, namely "continuing criminal activity and/or gang related activity." However, even though he objected to the instruction, he failed to proffer an instruction containing what he saw as the correct elements of the offense. This failure to proffer or abstract the proposed instruction precludes this court from considering the issue on appeal. *Plotts v. State*, 297 Ark. 66, 759 S.W.2d 793 (1988); *Shockley v. State*, 282 Ark. 281, 668 S.W.2d 22 (1984); *Orsini v. State*, 281 Ark. 348, 665 S.W.2d 245 (1984), *cert. denied*, 469 U.S. 847 (1984). Accordingly, we must affirm.

Affirmed.