STATE of Arkansas *v.* Salena Rae BOWERS

CR 98-555                                         976 S.W.2d 379

Supreme Court of Arkansas
Opinion delivered October 8, 1998

*Winston Bryant*, Att'y Gen., by: *Mac Golden*, Ass't Att'y Gen., for appellant.

*Charles Duell*, Public Defender, for appellee.

ROBERT L. BROWN, Justice. The appellant in this case is the State of Arkansas, which appeals the trial court's suppression order regarding marijuana and methamphetamine found in connection with the appellee, Salena Rae Bowers. We hold that we have jurisdiction to hear this appeal under Ark. R. App. P.—Crim. 3, and we affirm the suppression of evidence.

The facts are these. Salena Bowers was a passenger in a car driven by Russell Plumley on July 18, 1997. Police Officer Andrew Harrison of the Rogers Police Department stopped Plumley's car shortly after midnight because it was traveling 10-15 m.p.h. below the speed limit, the car's right turn signal failed to deactivate, and the occupants of the car were watching him in the side-view mirrors.[1] Officer Harrison is a member of the crime suppression unit in the Police Department, which is primarily responsible for drug interdiction. Once stopped, Plumley got out of the car quickly, and Officer Harrison ordered him back in the car. The police officer described Plumley as acting jittery and "sweating profusely."

After calling for backup assistance, Officer Harrison asked for identification from Plumley and Bowers. At that time, he smelled alcohol on Plumley's breath, and he asked him about his alcohol consumption. Plumley admitted that he had drunk a beer earlier in the evening. When neither Bowers nor Plumley could produce a driver's license, Officer Harrison tried to run their names through the ACIC computer system, but it was out of service.

---

[1] According to the probable-cause affidavit completed by Corporal Allen Harte of the Rogers Police Department, the stop was at "0006 hours." It is also somewhat unclear as to whether the stop after midnight actually occurred on July 19, 1997.

Patrolman Jarod Mason arrived, and Officer Harrison conducted a field-sobriety test on Plumley (the horizontal gaze nystagmus test), which showed that he had consumed more than one beer.

Officer Harrison then asked Plumley if he had any guns in the car, and he told him there was one in a bag in the backseat. At this point, Officer Harrison asked Bowers to get out of the car while he retrieved the gun. He found a Taurus 9mm handgun in the car in a small overnight bag, exactly where Plumley said it would be. Corporal David Spain of the Rogers Police Department arrived to assist, and Officer Harrison searched the vehicle. He found a fully loaded 9mm magazine in the car's console, a wooden club in the passenger side doorjamb, and a small black vinyl bag shoved halfway under the passenger seat. Officer Harrison felt the bag, which was hard, opened it, and found 182 grams of marijuana. The police officers arrested Plumley and Bowers. Plumley attempted to flee but was soon apprehended.

After searching the car further, the police officers found 5.5 grams of methamphetamine. Plumley and Bowers were charged with simultaneous possession of drugs and firearms, possession of a controlled substance (methamphetamine) and possession of a controlled substance with the intent to deliver (marijuana). Plumley and Bowers both moved to suppress the drugs seized because of the illegal stop. The trial court granted the motion as to Plumley but denied it for Bowers due to lack of standing. When Bowers's defense counsel filed a motion to reconsider, the trial court changed its ruling and also suppressed the evidence as to her. The State now appeals from that suppression order. Neither party contests the fact that the initial stop was illegal.

The State's argument on appeal is that Bowers cannot challenge the search of the car and seizure of the drugs following the illegal stop because she did not have a reasonable expectation of privacy in the car. The State further maintains that just because a passenger possesses standing to challenge an illegal stop does not mean the subsequent discovery of contraband is the fruit of the passenger's unlawful detention. Bowers, on the other hand, contends that a passenger may challenge an illegal stop of a vehicle, which is independent of a search, even if he or she has no posses-

sory or ownership interest in the car, and that the remedy for an unconstitutional search is suppression of the evidence.

This court has said that an appellant must have standing to assert Fourth Amendment rights because those rights are personal in nature. *See Dixon v. State*, 327 Ark. 105, 937 S.W.2d 642 (1997); *Littlepage v. State*, 314 Ark. 361, 863 S.W.2d 276 (1993). Furthermore, this court has been constant in its holdings that a passenger in a vehicle must have an expectation of privacy in the searched vehicle in order to have standing to contest the search on Fourth Amendment grounds. *See Stanley v. State*, 330 Ark. 642, 956 S.W.2d 170 (1997); *McCoy v. State*, 325 Ark. 155, 925 S.W.2d 391 (1996); *Rockett v. State*, 319 Ark. 335, 891 S.W.2d 366 (1995); *Littlepage v. State, supra*. This expectation of privacy must derive from a possessory interest in the passenger which was conferred by the vehicle's owner or someone with the authority to grant possession to the passenger. *See Stanley v. State, supra; McCoy v. State, supra*.

Here, though, the issue presented to the court is not the same because an illegal stop is involved and the search for and seizure of the drugs directly followed the stop. We recognized by way of *dictum* in *Dixon v. State, supra*, that a search on the heels of an illegal stop presents a different issue with respect to occupants of the vehicle. We said: "Similarly, the occupants of a vehicle have standing to assert their own Fourth Amendment rights, independent of the owner's, such as in a challenge to the initial stop, or the seizure of their person." *Dixon*, 327 Ark. at 111, 937 S.W.2d at 646 (*citing* John Wesley Hall, Jr., SEARCH AND SEIZURE § 6:10 (2d ed. 1991)).

The great weight of authority is in accord with the *dictum* set forth in the *Dixon* decision. *See, e.g., United States v. Brown*, 102 F.3d 1390 (5th Cir. 1996); *United States v. Kimball*, 25 F.3d 1 (1st Cir. 1994); *United States v. Roberson*, 6 F.3d 1088 (5th Cir. 1993); *United States v. Rusher*, 966 F.2d 868 (4th Cir. 1991); *United States v. Erwin*, 875 F.2d 268 (10th Cir. 1989); *United States v. Durant*, 730 F.2d 1180 (8th Cir. 1984); *United States v. Lawson*, 782 F.Supp. 1546 (S.D. Fla. 1992); *United States v. Daniel*, 804 F. Supp. 1330 (D. Nev. 1992); *Jarvis v. State*, 600 A.2d 38 (Del. 1991); *McKnight*

*v. State,* 612 N.E.2d 586 (Ind. Ct. App. 1993); *State v. Epperson,* 703 P.2d 761 (Kan. 1985); *Ott v. State,* 600 A.2d 111 (Md. 1992); *Scott v. State,* 877 P.2d 503 (Nev. 1994); *State v. Carter,* 630 N.E.2d 355 (Ohio 1994); *Howard v. State,* 888 S.W.2d 166 (Tex. Ct. App. 1994).

The case of *United States v. Kimball, supra,* is illustrative of the reasoning employed in holding that a passenger in a car has standing to contest a search after an illegal stop. In *Kimball,* the First Circuit noted that a police officer's act of stopping a vehicle and detaining its occupants constitutes a seizure under the Fourth Amendment, which affects an occupant's right to freedom from random, unauthorized, investigatory stops and from the anxiety that accompanies such stops. *See Kimball, supra, (citing Delaware v. Prouse,* 440 U.S. 648 (1979)). The *Kimball* court said:

> The fact that a defendant is a passenger in a vehicle as opposed to the driver is a distinction of no consequence in this context. The interest in freedom of movement and the interest in being free from fear and surprise are personal to all occupants of the vehicle, and an individual's interest is not diminished simply because he is a passenger as opposed to the driver when the stop occurred.

*Kimball,* 25 F.3d at 5.

The State counters with the case of *United States v. Carter,* 14 F.3d 1150 (6th Cir. 1994), which declined to exclude evidence against a passenger which was obtained as a result of an illegal stop. In *Carter,* a van was pulled over in Memphis, based on nothing more than its North Carolina tag. This was an illegal stop, and the police officers searched the van and detained its occupants. They discovered marijuana, and the passenger argued that this evidence should be suppressed as the fruit of an illegal stop. The Sixth Circuit held that just because the stop was illegal, it did not follow that "the discovery and seizure of the marijuana represented 'fruit' of Mr. Carter's unlawful detention." *Carter,* 14 F.3d at 1154.

We conclude that the majority view presents the better reasoning on this point. Surely, Bowers's freedom was curtailed by the illegal stop to the same extent as Plumley's. She was similarly asked to produce a driver's license and told to get out of the vehicle which was then searched. There is no doubt that the

search which resulted in finding marijuana and methamphetamine was the direct result of the illegal stop. Under these circumstances, we hold that the search was tainted, and we affirm the trial court's ruling that the drugs seized must be suppressed.

Affirmed.